THE KANSAS CITY SURBURBAN BELT RAILWAY COM-
PANY v. ANDREW HERMAN, *a Minor, etc.*

No. 12,037.*  (68 Pac. 46.)

SYLLABUS BY THE COURT.

RAILWAYS—INJURY TO INFANT—*Instructions Sustained.* Where
the jury are instructed that a railway company is guilty of negli-
gence when it runs a train within the limits of a city of the first
class faster than is permitted by ordinance, but that such viola-
tion of law does not of itself render the railway company liable to
one who has sustained injuries unless it is shown by a preponder-
ance of the evidence that such injuries "were the direct and proxi-
mate result of the rate of speed at which the train was traveling,"
the instructions, construed together, are not erroneous.

Error from court of appeals, northern department;
JOHN H. MAHAN, ABIJAH WELLS, and SAM'L W. MC-
ELROY, judges. Opinion filed March 8, 1902. Af-
firmed.

*Miller, Buchan & Morris,* and *Lathrop, Morrow, Fox
& Moore,* for plaintiff in error.

*W. B. Sutton,* and *Silas Porter,* for defendants in
error.

The opinion of the court was delivered by

ELLIS, J.: This action was originally brought
against the Kansas City Suburban Belt Railway Com-
pany, a Missouri corporation, and the Union Terminal
Railway Company, a Kansas corporation, by Andrew
Herman, a minor, by his next friend, to recover $10,-
000 in damages for an injury to the plaintiff, a child
four years of age, by reason of the alleged negligence
of the defendants. On the day the summons was re-
turnable, the defendant the Kansas City Suburban

*For opinion by court of appeals, see 62 Pac. 543.—REP.

Railway Co. v. Herman.

Belt Railway Company filed its petition and bond for
a removal of the cause to the United States circuit
court, on the ground of the diversity of citizenship be-
tween the plaintiff and that company, and because the
controversy between the plaintiff and said company
was separable from the controversy between the plain-
tiff and the Union Terminal Railway Company.   The
court denied the application.   Thereafter the cause
was tried at the September, 1898, term of the court of
common pleas of Wyandotte county.   At the close of
plaintiff's testimony, the Union Terminal Railway
Company interposed a demurrer to the evidence, which
the court sustained.   The Kansas City Suburban Belt
Railway Company thereupon, and before any other
proceedings were had in the case, filed another peti-
tion and bond for removal to the United States circuit
court on the ground of diversity of citizenship between
the plaintiff and defendant, alleging the filing of the
former petition for removal and the fact that the
demurrer of the Union Terminal Railway Company
had been sustained, and further alleging that not
only was no evidence offered, or attempted to be
offered, by plaintiff to show a cause of action
against the Union Terminal Railway Company, but
that the latter company had been joined with it for
the sole purpose of preventing a removal of the cause
to the United States circuit court.   Plaintiff filed
what his counsel called an answer to the petition
for removal, alleging good faith in joining the two
railways as defendants, and setting forth, in sub-
stance, that the counsel for the respective railway
companies had promised to produce certain docu-
ments and papers in court which, counsel for plain-
tiff below contended, would have shown liability on
the part of both of said railway companies, but that,

after relying upon the good faith of counsel to pro-
duce such papers and records, at the last moment,
and during the trial, counsel had violated such prom-
ise and refused to produce them, for which reason, it
was claimed, the plaintiff had been deprived of ma-
terial evidence. This so-called answer was properly
verified by counsel for plaintiff below, and thereupon
the court again denied the right of removal to the
railway company, to which the latter excepted. The
trial proceeded, and resulted in a disagreement of the
jury. At the ensuing February term of court, the
plaintiff, upon leave granted, filed an amended peti-
tion, reducing the amount of damages claimed to
$1999, upon which issues were joined, and the cause
tried during the May term following.

The jurisdiction of this court to hear and determine
the case is challenged upon the ground that the sec-
ond application for removal to the United States cir-
cuit court ought to have been granted, for which reason
the case must be here treated as though it had in fact
been removed to the federal court. In support of this
contention, the case of *Powers v. Chesapeake & Ohio
Railway*, 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673,
is cited as authority. The following is quoted from
the opinion :

"In the case at bar, the second petition for removal,
as presented to the state court, alleged that the peti-
tioner was a citizen of the states of Virginia and West
Virginia only, that the plaintiff was a citizen of the
state of Kentucky, that Evans and Hickey had been
fraudulently and improperly joined as defendants, for
the purpose of defeating the petitioner's right of re-
moval ; that, because of their joinder, the case had
been remanded to the state court, and that the action,
having been discontinued against them, was now, for
the first time, binding against the petitioner alone.
. . . It was thus made to appear, upon the record

of the state court, that the case could not have been removed before, and that it had now become in its nature removable by reason of the diverse citizenship of the parties. Such being the case, it was rightly removed by the second petition for removal into the circuit court of the United States."

It will be observed that in that case the plaintiff voluntarily dismissed his action against those defendants whose relationship to the action afforded the only impediment to a removal of the cause into the United States court.

In the later case of *Whitcomb v. Smithson*, 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 303, suit was brought against two railroad companies to recover for personal injuries sustained by an employee of one of them, and after the evidence had all been taken at the trial, the court sustained a motion to instruct the jury to return a verdict on behalf of one of the railroad companies, because the evidence did not sustain the allegations of the complaint as to the negligence of that defendant, and thereupon the remaining defendant, alleging diverse citizenship, immediately filed a petition and bond for removal of the cause to the United States court, which was denied. Referring to the motion to instruct the jury, the court, speaking through Chief Justice Fuller, said :

"This was a ruling on the merits and not a ruling on the question of jurisdiction. It was adverse to plaintiff and without his assent, and the trial court rightly held that it did not operate to make the cause then removable, and thereby to enable the other defendants to prevent plaintiff from taking a verdict against them."

We regard that decision as decisive of this case. It having been made to appear *prima facie* that the railway companies originally made party defendants were

not joined. for the fraudulent purpose of preventing a removal, the sustaining of the demurrer to the evidence as to the Kansas corporation, without the consent of plaintiff below and against his desire and interest, did not render the cause removable.

The Kansas City Suburban Belt Railway Company does a mere switching and transfer business for the different roads entering Kansas City. It runs no trains of its own, but merely handles and transfers cars for other railroads which it intersects in and about the city. The accident happened a few feet south of Central avenue, near the west bank of the Kansas river, in Kansas City, Kan. Central avenue runs east and west, and upon the line of that street a bridge spans the river, which, at that point, flows in a northerly direction, and the railway runs nearly parallel with the river. About 225 feet north of the north line of Central avenue a switch track leads west out of the main track of the railway, and extends southward across Central avenue, and parallel with the main track. Some distance south of the avenue is a private switch track owned by the Metropolitan Street Railway Company, which connects with the switch track just mentioned, and lies west of it. On the day of the accident this Metropolitan switch track was open, so that cars coming south down the main switch, or switch occupied by the Belt company, could pass, without obstruction, on to the Metropolitan track. Upon the latter track stood a coal-car. The plaintiff and another boy about his age had passed from Central avenue southward, and were following a beaten path used for travel along the Metropolitan track, when a train of twenty-seven cars backed rapidly from the north, and when the rear end of the train arrived at the switch north of

Central avenue, the first or rear car remained on the main line, the second was derailed, and most of the others turned in upon the switch track of the railway company and ran, with considerable velocity, toward the open Metropolitan switch. An employee in the power-house of the Metropolitan company, seeing the boys and realizing their danger, shouted at them, and plaintiff's companion ran to a place of safety while plaintiff, who was probably out of danger when given the warning, ran upon the Metropolitan track south of the coal-car, which, being struck by the train, started violently forward and ran over him, cutting off his foot.

The allegations of negligence contained in the petition which were finally submitted by the court to the jury, as contended for on the part of the plaintiff, were five in number, and are as follows:

"1. That said train of cars was traveling faster than six miles per hour, in violation of ordinance 2536 of the city of Kansas City, Kan.

"2. That there were not enough men in proper places on said train to communicate stop signals with reasonable promptness to the engineer who was in charge of the locomotive of said train.

"3. That, under the circumstances of this case and the rate of speed at which said train of cars was traveling, the brakes on the cars of said train should have been connected with the locomotive.

"4. That the trainmen who were operating said train did not observe that the switch connecting the side-track with the main track was not in a safe and proper condition for the passing of trains over it, when they reached said switch with said train, and not immediately stopping said train.

"5. That the main-line switch was not kept securely locked and fastened."

Of these, the second was waived by counsel for plain-

tiff below upon the argument. The instructions given upon these several claims of negligence were in substantial conformity with rules hitherto approved by this court, and appear to us to be free from material error, although objections are urged against each of them. As such instructions were very lengthy, and as no useful purpose could be subserved thereby, they are not set forth herein.

Plaintiff in error strenuously objects to the instructions which relate to a violation of the ordinance of the city of Kansas City, Kan., above referred to. While the jury were advised that the violation of such ordinance by the railway company constituted negligence, they were in effect informed that such violation of law did not of itself render the company liable, but that in order for them so to find it must be made to appear by a preponderance of the evidence that the injuries to plaintiff "were the direct and proximate result of the rate of speed at which the train was traveling." Therefore, the contention of plaintiff in error, that under the instruction the jury were authorized to infer that the company was liable from the mere fact that its train was running faster than the ordinance permitted, is without force.

Counsel for plaintiff in error, on the trial, sought to prove that the ordinance was unreasonable, in that near the place of the accident a grade existed in the track, and that, in order to transport a heavy train up such grade, it was necessary to run at a greater velocity than six miles an hour to secure the necessary momentum to go over the grade. To that end it offered to show the number of cars usually placed in a train and the rate of speed at which such train ordinarily ran at that point. The offer of evidence was refused by the trial court. Upon such ruling no error can be

Railway Co. v. Rhoades.

predicated.   By statute, the city was invested with the power to regulate the speed of trains within its limits. (Gen. Stat. 1901, §727, subd. 21.)   The rate of six miles per hour prescribed by the ordinance objected to· is not unreasonable, and while a compliance with it may require a reduction in the number of cars which might be carried upon a level in order that a given train may ascend a grade, such ordinance is not, for that reason obnoxious to criticism.

The other assignments of error are included within those adverted to above so far as they seem to deserve attention.   The record tends to show that the railway company had a fair trial.   The damages awarded are not claimed to have been excessive, and the special findings of the jury sustain the judgment, which is affirmed.

DOSTER, C. J., JOHNSTON, POLLOCK, JJ., concurring.