No. 21,211.

C. E. WILLIAMS, *Appellee,* v. THE IOLA ELECTRIC RAILROAD COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. AUTOMOBILE—*Crossing Railroad—Trolley Car Violating Speed Ordinance—Negligence.* A breach of a speed ordinance of a city by an interurban trolley car is negligence *per se;* but to subject the owner of the trolley car to liability for the violation of the city ordinance, in a damage suit by a private litigant, it must appear that the disobedience of the ordinance caused or aggravated the damages.

2. SAME—*Railroad Crossing—Obstructions to View—Duty of Driver.* It is not required in this state in all cases that one about to cross a railway track must stop, look and listen to assure himself that he can cross in safety; but where obstructions to his view prevent him from otherwise ascertaining the fact of safety, then it is his duty to stop to make sure of his safety before crossing.

3. SAME. Rule followed that a driver of an automobile cannot recover damages for injury to himself and his machine in a collision with a trolley car occasioned by the driver's attempt to cross a railway track without stopping to ascertain that he could cross in safety, when, owing to obstructions to his view, that fact could not have been otherwise ascertained.

4. SAME—*Railroad Crossing—Obstructions to View—Failure to "Stop, Look and Listen"—Contributory Negligence.* Plaintiff was driving his automobile along a public street and approached a railway crossing, but owing to obstructions to his view he could not ascertain whether there was any car coming on the railway track, and he did not stop to

ascertain that fact. At fifteen feet from the track nothing prevented him from seeing an approaching car, but he did not see it until the front end of his automobile was eight feet from the track, and he was then unable to stop his automobile in time to prevent a collision. *Held,* that plaintiff was guilty of such contributory negligence as will bar a recovery of damages against the trolley-car company.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed January 12, 1918. Reversed.

*Altes H. Campbell,* of Iola, for the appellant.

*F. J. Oyler,* of Iola, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case presents the usual consequences which arise when an automobile and a trolley car arrive at the same place at the same time.

The plaintiff was driving his automobile southward on Martin street in Gas city. An interurban passenger car belonging to defendant was running eastward on its car line, which crosses Martin street at right angles. A high embankment on the north side of the car line, with high weeds and grass growing thereon, obscured the car from plaintiff's view, and a collision occurred at the crossing; the plaintiff was injured and his automobile was damaged. Hence this lawsuit.

Plaintiff's petition charged defendant with various acts of negligence:

"That the defendant was careless, negligent and reckless in the commission of the injuries and damage referred to in (1) permitting grass and weeds to grow and accumulate on its right of way so as to obstruct the view of its cars approaching Martin street from the west, and which prevented plaintiff while driving southward, from seeing and observing the approach of defendant's car until within eight feet of the track; (2) in operating its car at the high, dangerous and reckless rate of speed of twenty-five miles per hour within the limits of Gas city and across Martin street in violation of the ordinance referred to; (3) in operating and running its car without headlights or other front lights and signals; (4) in failing to ring the bell, sound the gong or give other warning or danger signal of the approach of its car; and (5) in operating its car without a conductor."

Defendant answered that the alleged injuries and damages were caused by plaintiff's own negligence and without defendant's fault.

The general verdict was in favor of plaintiff, and the following special questions were answered by the jury:

"1. At what rate of speed per mile (hour) was the plaintiff's automobile moving when he first discovered the approaching car? Ans. Four to five miles.

"2. When plaintiff was at a point twenty-five feet north of the railroad track in question, what was there, if anything, to prevent him seeing or hearing the approaching car? Ans. Bank and weeds.

"3. What distance was the plaintiff from the railroad track in question when he first discovered the approaching car? Ans. Front end of automobile eight feet from rail.

"4. Were the inside lights and the headlight of the car in question burning as it approached Martin street at and just before the time of the accident? Ans. Light burning.

"5. From what distance within twenty-five feet north of the railroad track could plaintiff first have seen the approaching car in question? Ans. Fifteen feet.

"6. Did plaintiff as he was approaching the railroad crossing in question, bring his automobile to a stop before it reached the north rail of the track? Ans. No.

"7. When plaintiff was at a point eight feet north of the railroad track, what was there, if anything, to prevent him seeing or hearing the approaching car? Ans. Nothing.

"8. As the plaintiff approached the crossing in question what, if anything, was there to prevent him seeing or hearing the approaching car in time to stop his automobile before it passed on to the north rail of the track, if it did? Ans. Bank and weeds.

"9. What was the distance from the railroad track to the embankment, north of the track and west of Martin street, which plaintiff testified prevented him seeing the approaching car in question? Ans. Bottom of bank five feet from rail.

"10. At what rate of speed per hour was the defendant's car in question moving when the motorman discovered the plaintiff's automobile approaching the crossing? Ans. About twelve miles per hour."

Defendant appeals, contending that it was entitled to judgment on the special findings.

The jury found that the interurban car was running at a rate of twelve miles per hour. The city ordinance fixed the speed limit of such cars at six miles an hour. The reasonableness of this ordinance is not questioned, but it is contended that the violation of the city ordinance did not contribute to the accident. There is merit in that contention. The evidence shows that the automobile stopped at the north rail. It is therefore clear that the collision would have occurred even if the interurban car had been running at the speed permitted

Williams v. Electric Railroad Co.

by the ordinance. If plaintiff's automobile had not stopped at the north rail the defendant's car traveling at six miles an hour would have struck the automobile somewhere about the center—a matter of mathematical calculation. It is settled law that a mere violation of a city ordinance does not subject the party violating it to an action for damages unless those damages are proximately traceable to the disobedience of the ordinance or unless the disobedience of the ordinance clearly aggravated the damages. (*A. T. & S. F. Rld. Co. v. Morgan,* 31 Kan. 77, 1 Pac. 298; *Railway Co. v. Herman,* 64 Kan. 546, 68 Pac. 46; *Railway Co. v. Chick,* 6 Kan. App. 480, 483, 50 Pac. 605; see, also, Note, 5 L. R. A., n. s., 209-212.)

It is generally held that disobedience of a city speed ordinance is negligence *per se;* but to entitle one injured or damaged through the breach of the ordinance to recover judgment **thereon he must himself** be free from fault or negligence, and the latter point is the controlling question in this case. Was the plaintiff free from negligence? The embankment and weeds obscured his vision as he approached the crossing, yet he did not stop his automobile to determine whether he might cross in safety. At fifteen feet from the crossing nothing prevented him from seeing the approaching car. Even then, if plaintiff had been taking proper precaution for his own safety, he could have stopped his automobile before it reached the track, for its speed was only four or five miles an hour. The rule in this state is that when one is about to cross a railroad track, and cannot otherwise assure himself that he may safely do so, he must stop, look, and listen. (*Bunton v. Railway Co.,* 100 Kan. 165, 168, 163 Pac. 801; *Burzio v. Railway Co.,* post, p. 287, just decided, and citations therein.) Such, indeed, was the general rule in the cases of pedestrians and horse-drawn vehicles before the coming of automobiles. (*A. T. & S. F. Rld. Co. v. Townsend,* 39 Kan. 115, 17 Pac. 804; *Railroad Co. v. Willey,* 60 Kan. 819, 58 Pac. 472.) With the coming of the automobile, a highly scientific invention and easy of control, and with its great weight and steel construction and its consequent capacity for imperiling the traveling public in case of collision, the courts have been compelled to develop a more rigid rule, or rather to insist more rigidly upon the application of the old rule, touching the duty of self-preservation imposed

on those about to cross a railway track in such a vehicle. (*Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742; *Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023; *Cathcart v. Oregon-Washington R. & Nav. Co.*, [Ore.] 168 Pac. 308.)

In the Wehe case the view of the driver of the automobile was shut off by a stone wall and buildings. The court said:

"The driver of an automobile cannot recover damages for injury to himself, and his machine, where he approaches a railway track at a place at which he cannot see along the track until his automobile is in a place where it will be struck by a passing engine or cars, and does not stop his car to ascertain whether or not there is danger, although he listens before going into the place of danger and does not hear any engine or cars coming." (Syl.)

Notwithstanding the defendant's disobedience of the speed ordinance of the city and its possible negligence in permitting weeds to grow on the embankment along its right of way, the special findings show that the plaintiff was guilty of such contributory negligence as bars his right of recovery, and the defendant was entitled to judgment on the special findings of the jury.

Reversed.