No. 22,562.

JESSIE L. WAYMIRE, as Administratrix, etc., *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Death of Section Foreman—No Actionable Negligence Proven*. In an action under the federal employers' liability act to recover for the death of a section foreman who, with the other section men, rode on a hand car following a freight train into a station and stopped his car within a car length or two at the rear of the train, which was backed up without the giving of any signal and struck and killed the foreman, *held*, on the facts stated in the opinion, the railroad company owed the deceased no duty to warn him of the backward movement of the train.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed June 5, 1920. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott*, all of Topeka, and *J. D. Houston*, of Wichita, for the appellant.

*S. B. Amidon, D. M. Dale, S. A. Buckland, H. W. Hart, Glenn Porter*, all of Wichita, *George J. Benson, J. M. Pleasant*, both of El Dorado, and *Ezra Branine*, of Newton, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In an action under the federal employers' liability act, plaintiff recovered a judgment for $11,000 damages for the death of her husband, Joseph E. Waymire, who was a section foreman, and whose death was caused by an accident at the station of Douglass, Kan., about 6 o'clock in the evening of September 28, 1916.

At Douglass the railroad extends north and south. Waymire, with four other section hands returning from work, rode on their hand car behind freight train No. 37, which came into the station from the north on the main track. Standing on the passing track east of the main track, and headed north, was freight train No. 1809, waiting to move north on the main line when train No. 37 should pass south and clear the switch. One hundred seventy-one feet south of the switch stand was a clearance post which indicated the widest distance between the passing track and the main line. Waymire desired to move his hand car south of the switch to avoid the necessity of removing it from the track and to make way for train No. 1809. He followed train No. 37 south of the switch stand, keeping his hand car at an average distance of about two car lengths from the rear of the train. It was claimed by the plaintiff that the train backed up and struck the hand car, causing the injuries which resulted in Waymire's death. The train crew, including the brakeman, conductor, and engineer of No. 37, testified that the train was not backed at any time while it was at the station; and the defendant's testimony was that the backward movement of the rear cars was caused by the running out of the slack, after the engine came to a standstill. The jury found, however, that the train backed. The finding was based upon the dying declaration of Waymire and the testimony of Mrs. Waymire. In his dying statement Waymire said that the train backed up. The Waymires lived near the scene of the accident, and Mrs. Waymire testified that she was out in the yard and saw the two trains standing at the station, and her husband coming in on the hand car, and that train No. 37 backed up about two car lengths. The train consisted of seventy cars and was more than a half mile long. While there was a conflict in the evidence, the finding of the

jury determined the fact that the train made a backward movement after it had come to a standstill.

Several minutes before train No. 37 made any backward movement, it had stopped at the station in order to unload merchandise from one of the forward cars. In this position, the rear of the train extended some distance north of the passing-track switch and obstructed the main line, so that it was necessary for the rear brakeman, P. U. Hershler, to go back a quarter of a mile to flag trains that might be approaching from the north. After being recalled and while he was returning, Waymire's hand car overtook him, and he got on the hand car and rode to within two car lengths of the rear of the way car. His testimony was that he stepped off the hand car while it was in motion, ran ahead, climbed on top of the way car, and walked forward on top of the train several car lengths in order to signal to the head end and notify the other members of the crew that he had returned to the train. The evidence shows that he was the only member of the train crew who knew that the hand car was following immediately behind the train. He testified that after the backward movement of the cars, he returned to the end of the train and learned that Waymire had been injured. None of the other section men was injured. The evidence does not disclose whether they jumped or how they escaped injury.

The testimony of a number of experienced railway men, including the conductor and engineer of train No. 1809, a section foreman and a road master, was, in substance, that in their judgment it would not be safe for the hand car to follow along within two or three car lengths of a train on the main track, because of the danger that the train might make a backward movement, and that when the train stopped south of the clearance post, Waymire should have backed his car past the post or have taken the car off the track; that by doing either of these things he could have avoided all danger. The defendant also introduced the printed rules of the company, which provide that all persons engaged in track or bridge work shall keep a sharp lookout for trains from either direction and shall not assume that a train may not come for any certain time, nor act on the assurance of any person to that effect, and must protect themselves at all times, when necessary, with proper

signals; that the greatest care must be exercised by section men and bridgemen while using hand cars on the main track, to avoid collisions with trains.

The jury made a finding that their verdict was based on the negligence of the defendant in improperly handling train No. 37, by moving it backward without giving a signal. They were asked to state which employee was guilty of the negligence, and answered that it was the rear brakeman. They found that the employees in control of the train knew of the dangerous proximity of the deceased to the rear of the train before the collision, and that the employees learned of this fact from the rear brakeman, "who rode in on the hand car and knew its position." They found that Waymire was not guilty of negligence contributing to his death; that just before the collision occurred the hand car came to a standstill about two or three car lengths from the rear of the train, and that the trainmen, after stopping the train, reversed the engine and moved the train toward the point of collision with the hand car.

Finding No. 14 was to the effect that there was no necessity for Waymire to follow on through the north switch behind the south-bound train, aside from the inconvenience of removing the hand car from the track at some point north of the switch in order to let train No. 1809 pass; and further, that there was nothing to prevent Waymire from easily avoiding the collision by removing the hand car from the track at some point north of the switch. The finding that just before the accident occurred the employees in charge of the train knew of the position of the hand car and of Waymire, must be construed as meaning that notice to the rear brakeman of these facts was notice to the engineer and conductor of the train who were in charge of the movement of the train. It appears, however, that Hershler was at one end of the train and the engineer was at the other end, and that the train was more than a half mile in length. The findings of notice and negligence are obviously based upon the theory that it was the duty of the rear brakeman, upon reaching the top of the train, to notify the engineer at the other end of the train of the position and situation of the hand car.

The defendant contends that the only question involved in the case is, whether in the operation of a railroad "a train is

obliged to keep out of the way of a hand car, or a hand car to keep out of the way of a train." In our view of the case, this is the controlling question. Because, if it be assumed that notice and knowledge of the rear brakeman, respecting the situation of the hand car, was the knowledge of the other members of the train crew, the question in its last analysis is, whether those in charge of the train owed Waymire the duty to warn him that the train was about to be moved backward.

In addition to a general denial, the answer set up the affirmative defenses of contributory negligence and assumed risk. Consideration of the affirmative defenses may be eliminated for the reason that unless Waymire's death resulted, in whole or in part, from the negligence of the employees in charge of train No. 37, the plaintiff cannot recover, and unless these employees owed some duty to Waymire which they failed to discharge, they were not guilty of negligence. As a general rule, the question of negligence is a mixed one of law and fact to be decided by the court when the facts are undisputed or conclusively proved, and to be left to the jury when the facts are disputed and the evidence is conflicting. (Wharton on Law of Negligence, §420, and to the same effect see Bouvier's Law Dictionary, Rawle's Third Rev., Title "Negligence," 2315.) In the present case the facts are conclusively established by the findings, and their effect is for the judgment of the court.

In the case of *Land v. Railroad Co.*, 95 Kan. 441, 148 Pac. 612, which was brought under the federal employers' liability act, a section foreman was injured by a train at a road crossing and the negligence relied upon was the failure of the train to sound the usual crossing signals. In that case it was ruled that:

"Railroad companies in the operation of their roads may rightfully assume that their section men while at work upon or along the track will look out for the approach and passage of trains at all times, and ordinarily such companies owe to their section men no duty to warn them of the approach of trains save when such employees are found to be in a place of danger and it becomes apparent that they will not or cannot protect themselves." (Syl. ¶ 1.)

"Crossing signals are not intended or required for the benefit of section men at work upon or along the track near a crossing, and the failure to give such signals is not negligence as to such employees thus engaged." (Syl. ¶ 3.)

In the opinion it was said that—

"It follows naturally and logically that a railroad in respect to the speed of its trains can hardly owe a higher duty to a section man than to a stranger about to cross the track, and if such stranger must expect such speed as the exigencies of the traffic seem to require by so much the more must the trackman himself expect it."   (p. 448.)

The opinion commented upon the fact that trackmen are employed for the very purpose of enabling the railroad to furnish service to the public, and it was said that they

"cannot require the employer to impair its efficiency by acting as watchman for them.  .  .  .   These views find support in the decisions of numerous courts, though usually from the standpoint of assumption of risk rather than from that of duty to warn."   (pp. 448, 449.)

The opinion quoted from *Morris v. Boston & Maine Railroad,* 184 Mass. 368, holding a railroad company was not liable to a section hand who was run into by a wild engine pushing a snowplow, and where it was said:

"By the nature of his employment a section hand on a steam railroad must look out for passing trains, and such is the settled law of the Commonwealth.   (Citing authorities.)   The rule of law is the same elsewhere.   (*Aerkfetz v. Humphreys,* 145 U. S. 418; *Pennsylvania Railroad v. Wachter,* 60 Md. 395; *Carlson v. Cincinnati, Saginaw & Mackinaw Railroad,* 120 Mich. 481.)"   (p. 371.)

In *Loring v. K. C. Ft. S. & M. R'y Co.,* 128 Mo. 349, cited in the opinion in the Land case, *supra,* it was said:

"If the law exacts of a traveler upon a highway the duty of looking and listening, *a fortiori* it demands of an employee familiar with the usages and dangers of a switch yard, that he look before he steps upon a track upon which his daily experience teaches him a train, or an engine, may pass at any moment."   (p. 359.)

In *C., N. O. & T. P. R. Co. v. Swann's Admx.,* 160 Ky. 458, Swann was foreman of a crew of men engaged in doing work near the railroad tracks and a passing train struck and killed him.   One of his duties was to keep a lookout for the approaching trains so that the track would be safe and the men under his charge protected.   The decision turned upon the sole question of whether the railway company owed to Swann the duty of having its train under control, keeping a lookout and giving warning of its approach, or the duty of doing any one of these acts.   The action was under the federal statute.   In the opinion it was said:

"To the employé like Swann, whose duty it is to look out for trains and protect the track, the company does not owe any of the duties assigned as negligence in this case. . . . It was his business not only to take care of himself but to take care of the men and property under his charge, and the company and its employés in other branches of the service had the right to assume that he would perform this duty and were relieved of the necessity of exercising towards him the degree of care other employés not charged with like duties might have the right to demand. . . . Men in charge of trains, especially in the engine, have a multitude of duties to perform in the interest of and for the protection of the public, and they ought not to be distracted from the performance of these duties by being required to regulate the speed of the train and give notice and keep a look-out for other employés whose business it is to keep out of the way of trains. (pp. 468, 469.)

It was held that the lower court should have directed a verdict in favor of the railway company.

In *Coleman's Admr. v. Pittsburg C. C. & St. L. Ry. Co.*, 139 Ky. 559, Coleman, a crossing flagman, was killed by one of the company's trains. In an action by the administrator to recover damages, it was said in the opinion:

"The master was under no obligation to give the flagman special notice of that which it was already his duty to know, or to provide a brakeman or other servant for the rear of the car to warn him to take notice of that which it was his primary duty to observe. From a careful inspection of this record we are unable to see wherein any negligence from appellee toward the decedent is proven." (p. 562.)

In the case of *L. & N. R. R. Co. v. Hunt's Admr.* et al., 142 Ky. 778, a recovery was denied on the ground that it was the duty of Hunt, who was a flagman, and was killed by a train backing upon him, to keep a lookout for trains, and therefore the only duty the company owed him was to prevent injury to him after his peril was discovered.

In *Aerkfetz v. Humphreys*, 145 U. S. 418, plaintiff was working on one of the railroad tracks and was run over and injured by a freight car moved by a switch engine. It was held that the facts disclosed no negligence on the part of the railway company. In the opinion Justice Brewer said:

"There could have been no thought or expectation on the part of the engineer, or of any other employé, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume

that any employé, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars.   There were no strangers whose presence was to be guarded against.   The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion.   The person in direct charge had a right to act on the belief that the various employés in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach.   The engine was moving slowly, so slowly that any ordinary attention on the part of the plaintiff to that which he knew was a part of the constant business of the yard would have made him aware of the approach of the cars, and enabled him to step to one side as they moved along the track.   It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employés who had all the time knowledge of what was to be expected.   We see in the facts as disclosed no negligence on the part of the defendants." (p. 420.)

In *Connelley v. Pennsylvania R. Co.*, 201 Fed. 54, 119 C. C. A. 392, an experienced trackwalker stopped to make repairs while enveloped in steam escaping from a standing engine and was struck and killed by a train.   It was held there could be no recovery because there was no negligence on the part of the defendant.   The opinion, after quoting from the language of Justice Brewer, *supra*, said:

"Indeed, in thus making self-protection the substantial safeguard of trackwalkers and sectionmen, the law is reasonable and just, for no other dependable safeguard can be afforded their perilous work in the practical operation of railroads.   As said in *Keefe v. Railway Co.*, 92 Iowa, 182, 60 N. W. 503, 54 Am. St. Rep. 542, 'These rules are founded upon the necessities of the business of operating railways.'  .  .  .  This rule has the uniform support of courts in all sections of the country." (Citing cases.) (p. 57.)

It would unduly extend the opinion to make further citations of cases and authorities upholding the doctrine.   The weight and size of a hand car in comparison to that of a heavy train of cars, the importance and necessity for the movement of the latter, and the readiness with which a hand car may be lifted from the track, and the usual custom of section men to lift hand cars in order to avoid collisions with trains, are matters known to courts from common observation; and the testimony of the experienced railroad men that the duty rested upon Waymire in the situation he found himself immediately before the accident to look out for the safety of himself, the

Dana v. Gas Co.

men under him, and the property of the company, merely confirms what courts will take notice of.

The findings and the undisputed facts show that the employees in charge of the movement of the train, who were a half mile away from where the accident occurred, had no actual knowledge or notice that Waymire was in danger. It is argued, however, that they should have known of his situation because the engineer testified that before running into the station he passed the section men and saw them standing with their car beside the track at a place where they had removed it. But the engineer had the right to assume that the section foreman and his men would continue to look out for their own safety. This was equally true of the rear brakeman. When he left the hand car and climbed upon the train, he had the right to assume that the section men, instead of relying upon his giving signals to the engineer not to back the train, would protect themselves.

Wholly aside from any question of negligence on the part of Waymire, or the question of assumption of risk, the undisputed facts disclose there was no omission of any duty the defendant owed to him, and for that reason the judgment must be reversed and the cause remanded with directions to render judgment for the defendant.