No. 27,886.

ALMAE SHELDEN, *Appellee*, v. THE WICHITA RAILROAD AND LIGHT
COMPANY, *Appellant.*

(264 Pac. 732.)

SYLLABUS BY THE COURT.

NEGLIGENCE—*Violation of City Ordinance—Protection Must Be Against Particular Hazard Encountered.* In attempting to cross a city street, a girl ten years old walked into the side of a passing automobile after she had emerged from behind a standing street car, and was injured. In an action for damages prosecuted against the street-car company by the girl's mother, the jury found the negligence of the company consisted in violating an ordinance of the city forbidding the street car to remain at the place where it was standing. The ordinance was a traffic ordinance, enacted to facilitate movement of traffic, and was not enacted to provide pedestrians and automobile drivers with opportunity for observation. *Held,* the street-car company is not liable to plaintiff.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed March 10, 1928. Reversed.

*V. Harris, Robert C. Foulston* and *George Siefkin,* all of Wichita, for the appellant.

*John W. Adams* and *H. C. Osborne,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from personal injury to plaintiff's daughter who, in attempting to cross a city street, collided with a passing automobile when she emerged from behind a standing street car. Plaintiff recovered, and the street-car company appeals.

Cleveland avenue in the city of Wichita crosses Tenth street and extends north and south from the intersection. Defendant operates an electric street railway on Cleveland avenue. The cars are one-man cars. On the day of the accident the motorman of a southbound car permitted his car to stand on the track while he went to a filling station which occupies the corner east of Cleveland avenue and north of Tenth street. The south end of the car was north of the north line of Tenth street a distance estimated by witnesses to be from twenty-five to forty feet. The car was not on a crosswalk and was not in front of an intervening street. Dur-

Negligence, 29 Cyc. p. 438 n. 63.

ing the five or six minutes the motorman was away from the car the accident occurred.

Plaintiff lived on the west side of Cleveland avenue. Her daughter Eleanore was ten years old. There was testimony that Eleanore left the front porch of her mother's home, went out to the street car, procured some pennies from a cousin who was on the street car, and then went around the north end of the car. Eleanore testified she was going to the filling station. Before she went back of the street car, and while she was back of the street car, she looked, and saw no automobile coming. She then walked around behind the street car. After she had gone beyond the east side of the street car just a little way, she saw an automobile coming from the south, and could not get out of the way. Since contributory negligence is not involved, the facts of the accident as related by adult, disinterested witnesses may be told. There was no one on the street car at the time of the accident. Children were playing in front of the Shelden home. Eleanore jumped down off the curb on the west side of the street, ran quartering across the street toward the filling station, and ran around the north end of the standing car. Fred Shellhammer was driving his automobile northward on the east side of the street, at a rate of speed estimated at from eight to twelve or fifteen miles per hour. When he was opposite the rear end of the street car, Eleanore ran into the side of the automobile and was thrown westward toward the street-car track. Shellhammer was sued with the street-car company, and a verdict was returned in his favor.

The petition alleged the street-car company was negligent in that the motorman violated an ordinance of the city of Wichita which reads as follows:

"That no car shall be allowed to stop on a crosswalk nor in front of an intervening street except to prevent danger to persons in the street or to avoid collision; nor shall any car be left standing in any street or highway unless the same is waiting for passengers. . . . Any employee of an individual, company or corporation, owning or operating an electric street railway, who shall violate any of the provisions of this section or aid or abet the same shall be deemed guilty of a misdemeanor, and on conviction shall be fined in any sum not less than five dollars nor more than twenty-five dollars."

With a verdict for plaintiff the jury returned the following special findings of fact:

"1. Was the street car in question standing still at the time of the accident? A. Yes.

"2. Did Eleanore Shelden walk behind the street car and in front of the automobile of Shellhammer, defendant? A. Behind the street car and into the side of automobile.

"3. Did the automobile of the defendant, Shellhammer, knock Eleanore Shelden back of the street car? A. Yes.

"4. If you find for the plaintiff against the defendant the Wichita Railroad and Light Company, state what particular act or acts of negligence on the part of the railroad company was or were the proximate cause of the injury complained of. A. Leaving street car standing unattended in violation of city ordinance."

The theory was that the street car prevented Eleanore from seeing the automobile and prevented Shellhammer from seeing Eleanore. She did not pause and look for an approaching automobile at the place where she should have looked. Had she done so, she could have avoided injury. Shellhammer, who exercised due care, could not prevent the accident after she appeared on the east side of the street car. Children and adults do sometimes run and walk and drive from behind standing and moving vehicles which obstruct vision, into the paths of other vehicles in motion, and the type of accident was such that it was just as likely to occur when the street car was moving, or when it was lawfully standing still. It was essential to recovery by plaintiff that the street-car company should be negligent in permitting the street car to be at rest between the Shelden house and the filling station. The negligence on which the verdict was based was violation of the city ordinance, and nothing else is open to consideration.

The ordinance made breach of its requirements punishable by fine of the guilty employee. It made no provision for private right of action, and plaintiff may not recover unless the ordinance was enacted to protect her as an individual against consequences of the conduct of which she complains. The ordinance was a traffic ordinance. It was enacted to relieve public travel on the streets of the city from blockade, congestion, and delay. The command of the ordinance was not to obstruct crosswalks and cross streets unless in an emergency, and to keep cars moving when not taking on or discharging passengers. It was not framed to provide individual pedestrians and automobile drivers with clear views, and because the object was to promote public and not private interest, the ordinance did not protect against the particular kind of hazard which was encountered.

The principle involved is well established. In the case of *Gorris*

*v. Scott,* L. R. 9 Exch. [1874] 125, an order of privy council authorized by act of parliament required that animals brought by sea to British ports should be carried in vessels divided into pens constructed in a prescribed manner, in order to prevent the introduction or spread of contagious or infectious diseases. Sheep in course of transportation were swept overboard at sea. The loss would not have occurred if the vessel had been equipped with pens as the order required. The headnotes read:

"When a statute creates a duty with the object of preventing a mischief of a particular kind, a person who, by reason of another's neglect of the statutory duty, suffers a loss of a different kind, is not entitled to maintain an action in respect of such loss.

.     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"The object of the statute and the order being to prevent the spread of contagious disease among animals, and not to protect them against perils of the sea, the plaintiffs could not recover."

In the opinion by Kelly, C. B., it was said:

"If we could see that it was the object, or among the objects of this act, that the owners of sheep and cattle coming from a foreign port should be protected by the means described against the danger of their property being washed overboard, or lost by the perils of the sea, the present action would be within the principle [of liability for breach of statutory duty].

"But, looking at the act, it is perfectly clear that its provisions were all enacted with a totally different view; there was no purpose, direct or indirect, to protect against such damage; but, as is recited in the preamble, the act is directed against the possibility of sheep or cattle being exposed to disease on their way to this country. . . . But the damage complained of here is something totally apart from the object of the act of parliament, and it is in accordance with all the authorities to say that the action is not maintainable." (p. 129.)

In the opinion by Pigott, B., it was said:

"Admit there has been a breach of duty; admit there has been a consequent injury; still the legislature was not legislating to protect against such an injury, but for an altogether different purpose; its object was not to regulate the duty of the carrier for all purposes, but only for one particular purpose." (p. 130.)

In the opinion by Pollock, B., it was said:

"Suppose, then, that the precautions directed are useful and advantageous for preventing animals from being washed overboard, yet they were never intended for that purpose, and a loss of that kind caused by their neglect cannot give a cause of action." (p. 131.)

In the case of *Lang v. New York Cent. R. R. Co.,* 255 U. S. 455 (1921), a brakeman was injured in the course of a switching opera-

tion when a car on which he was riding came in contact with a standing car which lacked a drawbar, draft timber, and coupling apparatus. The purpose of the switching operation was not to couple the moving car to the defective car; but if the defective car had been supplied with a proper coupler, the injury would not have occurred. Recovery was predicated on breach of the safety appliance act. The opinion of the court dealt quite unnecessarily with the doctrine of proximate cause, and it was held that failure to equip the defective car with an automatic coupler was not proximate cause of the injury. It was also held, and the court need not have gone further, that although the brakeman belonged to the class of persons which the statute was designed to protect, the statute protected against risk involved in coupling cars, and not against risk involved in collision of cars. The headnote reads:

"Where a brakeman, whose duty and purpose were to stop a string of switched cars before they reached a car standing on a siding awaiting unloading, was injured in a collision with it, having failed to stop the moving cars in time, *held,* that the fact that the standing car lacked a drawbar and coupler on the end where the impact was, did not render the railroad liable for the injury, even if their presence would have prevented it, since the purpose of the requirement of automatic couplers is to avoid risks in coupling and not to provide a place of safety between colliding cars." (p. 455.)

In the case of *Franklin v. Houston Electric Co.*, 286 S. W. 578 (Tex. Civ. App., 1926), a city ordinance required street cars to stop at designated places to take on passengers, and provided that vehicles should not approach nearer than ten feet from a car stopped to take on passengers. At a proper place plaintiff signaled a car to stop. The car did not stop. The movement of the car raised a cloud of dust, which prevented the driver of an automobile following the car from seeing plaintiff in time to stop, and plaintiff was struck by the automobile and injured. Plaintiff predicated liability of the street-car company on violation of the ordinance. The contention was that if the ordinance had been observed, the street car would have stopped, the automobile driver could have seen plaintiff and would have stopped, and the injury would have been avoided. Recovery was denied on the ground the ordinance did not apply. The headnotes read:

"Generally, one neglecting to perform specific duty imposed by statute or municipal ordinance is liable to those for whose benefit it was imposed for injuries proximately caused by such neglect, but injury must be such as legislation was intended to prevent.

Shelden v. Wichita Railroad and Light Co.

"Ordinance requiring that street cars be stopped at designated places to discharge and take on passengers *held* not intended to protect intending passenger from being struck by vehicle following street car as result of failure to stop.

"Ordinance prohibiting drivers of vehicles from approaching nearer than ten feet to street car, stopped to take on or discharge passengers, imposes no duty on street-car company to stop car to protect intending passenger from being struck by vehicle following it." (p. 578.)

The decisions which have been reviewed, and others, are discussed in connection with the subject of proximate cause in Green's Rationale of Proximate Cause, ch. 1, §3. The principles recognized have been approved by this court. In the case of *Denton v. Railway Co.*, 90 Kan. 51, 133 Pac. 558, a statute provided that railway cars should not be permitted to stand on a street crossing for a longer period than ten minutes without leaving an opening in the traveled way. Plaintiff was struck on a crossing by a switch engine, and charged the railway company with negligence because of violation of the statute, in consequence of which the driver of the automobile in which plaintiff was riding was prevented from seeing the switch engine. In the opinion, prepared by Mr. Justice Mason, it was said:

"In order for the violations of a statute to constitute actionable negligence the injury complained of must be of the sort the legislation was intended to guard against. [Citations.] The rule referred to results from a special application of the broader principle that the object of the statute must be looked to in order to determine who may invoke its benefit. The test whether an individual injured by the violation of a penal statute may recover damages from the wrongdoer is whether the legislature intended to give such right. . . . Evidently the purpose of the statute was to prevent obstacles to travel, not to sight; the injury in the mind of the legislature was that resulting from delay in crossing, not from collisions with a moving train." (pp. 53, 54.)

In the instant case the purpose of the ordinance was to facilitate movement of traffic, not to provide observational opportunity. The cases of *Pinson v. Young*, 100 Kan. 452 (storage of dynamite), and *Burrell v. Horchem*, 117 Kan. 678 (blinding light of automobile driven by boy), are distinguished because the regulations involved were designed to insure the personal safety of individuals.

In the brief for plaintiff it is said that violation of the city ordinance stands first in line in cause of the accident. Since the ordinance did not protect against the particular hazard encountered—obstructed view—but protected the general public interest in un-

obstructed flow of street traffic, the court is not concerned with questions of proximate and remote cause. Since the regulation did not relate to the risk, a review of the many cases decided by applying the rule of proximate cause is unnecessary.

The judgment of the district court is reversed, and the cause is remanded with direction to render judgment for the Wichita Railroad and Light Company.