No. 29,718.

LENNA B. GRIFFITH, MAE V. GRIFFITH and EVA S. HAGERMAN, *Appellees*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY and FELIX W. A. KNOLL, *Appellants*.

(295 Pac. 687.)

Opinion filed February 7, 1931.

*William R. Smith, Alfred A. Scott* and *C. J. Putt,* all of Topeka, for the appellants.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson* and *Howard T. Horrell,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by plaintiffs for the wrongful death of their father, Joseph D. Griffith, a railway crossing flagman in the service of the Union Terminal Railway Company in Wichita.

The regrettable tragedy happened in this fashion: In Wichita there is a street which runs east and west named Central avenue. The Santa Fe Railway Company has eight railway tracks which run north and south, lying side by side and crossing Central avenue. Griffith was stationed at the crossing to protect persons and traffic at the intersection of the railway tracks and Central avenue. His duty was to raise and hold a stop disk about 24 inches across to warn pedestrians, automobiles and other street traffic when engines and cars were approaching the crossing.

On the morning of March 17, 1928, one Felix W. A. Knoll came along Central avenue from the east, driving an automobile. As he approached the railway tracks a Santa Fe switch engine with rear end foremost came from the north, drawing several freight cars.

Griffith, the watchman, raised his stop disk to halt Knoll in the automobile. Knoll saw the train approaching but believed he could cross before it reached the crossing and did not stop. Griffith, however, planted himself in the path of the oncoming automobile, standing there until it almost touched him. Knoll killed his engine and ere he could get it started again and get out of the way the engine and cars were upon him. Griffith, seeing a collision was inevitable, started to get out of the way and ran towards the southwest. Knoll headed his automobile in the same direction. The railway engine struck the automobile. The automobile ran down Griffith and killed him.

Griffith's three daughters, all women of maturity, brought this lawsuit, alleging negligence on the part of Knoll and the railway company. One ground of negligence charged against the railway company was the breach of an ordinance of the city of Wichita which required all railway companies—

"To provide and maintain a watchman or switchman who shall be constantly upon the advancing end of any engine, cars, or if more than one car, upon the advancing end of the foremost car, whenever any such engines, car or cars are being switched or backed or propelled along or upon any railroad track within the corporate limits of the city."

Griffith was 79 years old, and drew a salary of $70 per month from the Union Terminal Railway Company. His life expectancy was four and three-quarters years.

The defendants filed separate answers. The railway's pleaded defenses were that the flagman's death came about through no fault of the railway company; that it occurred because of the negligence of Knoll and because of the contributory negligence of the deceased. It also pleaded that the flagman's death was due to the assumed risks of his employment.

Knoll's defense was a general denial; that he was not at fault; and that Griffith's death was caused by his own negligence or by that of the railway company or both.

Jury trial; general verdict for plaintiffs for $10,000. Special questions were answered. Space must be taken for most of these:

"No. 1. Q. What did Joseph D. Griffith do when he first noticed the approach of defendant's train to the crossing in question? A. He took his signal and went to the center street.

"No. 2. Q. Did the flagman, Joseph D. Griffith, undertake to notify and stop defendant, Knoll, in his automobile, before he entered upon the crossing where the collision occurred? A. Yes.

"No. 3. Q. What effort, if any, did Knoll make to avoid the collision in question after he first noticed the approach of defendant's train to the crossing in question? A. Nothing.

"No. 5. Q. How far was the train from the crossing when flagman Griffith first learned of its approach? A. Approximately 500 feet.

"No. 6. Q. If the flagman signaled Knoll of the approach of the train, how far was Knoll from the place of the collision at the time he was signaled by the flagman? A. Sixty feet or more.

"No. 7. Q. After observing Knoll approaching what did the flagman do? State fully. A. Signaled him to stop.

"No. 9. Q. If you find against the defendant railway company, state in what its negligence toward the flagman in which you base your verdict consisted. A. By not having a watchman on the advancing end of the train.

"No. 11. Q. If you find that negligence of the railway company was a proximate cause or one of the proximate causes of the accident, of what did that negligence consist? A. Of not having the proper watchman on the advancing end of the train.

"No. 12. Q. If you find that negligence of the defendant Knoll was a proximate cause, or one of the proximate causes of the accident, of what did that negligence consist? A. By not obeying the signal of the watchman to stop at a safe distance.

"No. 13. Q. At the time defendant Knoll entered upon the crossing, was flagman Griffith signaling traffic to stop at said crossing? A. Yes.

"No. 14. Q. Would the accident have been avoided if the flagman Griffith had not stopped and stood in front of the Knoll car? A. No.

"No. 15. Q. Do you find any acts of negligence on the part of the flagman Griffith contributing to the cause of the accident? A. No.

"No. 16. Q. If you find for the plaintiffs, state whether or not the acts of defendant Knoll simply furnished the condition for the accident or were the proximate cause thereof. A. Proximate cause.

"No. 17. Q. After defendant Knoll's car was stalled on the track on which the train was approaching, could the train have been stopped and the accident avoided? A. Yes."

Defendants filed separate appeals.

The railway company assigns various errors on rulings of the court, on the instructions, and on the excessive verdict; but the main contention is that the sole negligence which the jury found against it—the want of a watchman on the advancing end of the engine in conformity with the city ordinance—was not the proximate cause of the death of the flagman.

The manifest purpose of the city ordinance was an exercise of the city's police power to protect persons and property on the streets.

from injury by passing trains. The ordinance was not designed to regulate the operation of railway traffic for the protection of railway employees. While the breach of a city ordinance by a railway company is negligence *per se,* liability in damages cannot be predicated on its violation unless the breach of the ordinance is the proximate cause of the injury and damage, or substantially contributes thereto. (*Williams v. Electric Railroad Co.,* 102 Kan. 268, 271, 170 Pac. 397; *Cooper v. Railway Co.,* 117 Kan. 703, 232 Pac. 1024; *Whitcomb v. Atchison, T. & S. F. Rly. Co.,* 128 Kan. 749, 751, 280 Pac. 900.)

Griffith, the flagman, knew the engine and cars were approaching. He was warning Knoll of that very fact. If a watchman had been stationed on the advancing end of the engine the very unusual tragedy could not have been averted. Such a watchman could not be expected to foresee, any more than the enginemen foresaw, that Griffith would hold his ground on the railway track until it was too late to escape, merely to stop Knoll's automobile with his own body since Knoll would not obey the stop signal.

The general rule is that in the operation of railways, employees are presumed to be able to look out for themselves; and regulations for the protection of the public do not govern the measure of duty a railway corporation owes to railway employees.

In *Marklinger v. Railroad Co.,* 95 Kan. 69, 147 Pac. 1132, where a flagman stationed at a highway crossing to give warning of an unsafe condition of the track was struck and killed by a train, it was held that no action against the railway company for his death could be based on the failure of the enginemen to sound the whistle or stop the train promptly upon being signaled to do so by torpedoes placed upon the track. In the opinion it was said:

"The acts relied upon as constituting actionable negligence on the part of the defendant are the failure to sound the whistle for the crossing, and as an answer at the time the caution signal was reached, and the failure to stop the train sooner. The failure to blow the whistle for the crossing was not the omission of a duty owing to the flagman. (*St. L. & S. F. Rly. Co. v. Payne,* 29 Kan. 166; *Clark v. Mo. Pac. Rly. Co.,* 35 Kan. 350, 11 Pac. 134; Note, 17 L. R. A. 254.) The requirements that the engineer should sound the whistle in answer to the caution signal, and should stop the train promptly upon hearing the stop signal, were obviously intended for the protection of the passengers, and not for the flagman, and their violation could not be the foundation of an action on his part." (p. 70.)

To the same effect are the familiar cases of *Land v. Railroad Co ,*

95 Kan. 441, 148 Pac. 612; *Waymire v. Railway Co.*, 107 Kan. 90, 190 Pac. 588; *Quilantan v. Railroad Co.*, 109 Kan. 111, 115, 116, 197 Pac. 1095; and *Sheldon v. Wichita Railroad & Light Co.*, 125 Kan. 476, 264 Pac. 732.

See, also, notes in L. R. A. 1915F, pp. 558-561; Id. 564-566.

In *Coleman's Admr. v. Pittsburg C. C. & St. L. Ry. Co.*, 139 Ky. 559, an action was prosecuted against the defendant railway company for damages alleged to have been caused by negligence in backing its freight train over a watchman stationed at a street crossing in the city of Louisville and killing him. It was held, among other rulings adverse to a recovery, that the company owed him no duty to place a watchman on the train to prevent injuring him. The court reasoned thus:

"The sole question of negligence, as we gather it, is that of the absence of a brakeman or some person in the rear of the backing train at the time of the injury. It may be accepted without argument that a railroad company owes a different duty to its servants engaged in operating its trains from that it owes to its passengers or the public. That the absence of some one at the rear of the train at the point of crossing to give warning of the train's approach so as to prevent injury to those using the street at that point would have been negligence so far as the public was affected, cannot be questioned. But this is precisely what appellee had provided for in placing the decedent at that point. It could not be said to have been negligence in appellee to have failed to have a brakeman or other servant on the rear of the train at the crossing, when it had another there whose special and sole duty it was to observe the approach of trains and of pedestrians and vehicles so as to give timely and adequate warning of the danger. . . . It was his duty to watch for trains and to keep himself out of unnecessary danger. . . . The master was under no obligation to give the flagman special notice of that which it was already his duty to know, or to provide a brakeman or other servant for the rear of the car to warn him to take notice of that which it was his primary duty to observe. From a careful inspection of this record we are unable to see wherein any negligence from appellee toward the decedent is proven. Therefore the court should have given to the jury the peremptory instruction asked for at the close of the plaintiff's testimony." (pp. 561, 562, 563.)

In *Chambers v. Winston-Salem South Bound R. Co.*, 199 N. C. 682, 155 S. E. 571, a boy standing on a sidewalk at the intersection of a street and a railway track was struck by an automobile as it veered to avoid a collision with defendant's railway train. The boy was knocked under the train and killed. The plaintiff administrator charged the railway company with concurrent negligence with the automobile driver on account of its failure to ring a bell as required

by a town ordinance. It was held that while the violation of the town ordinance made the railway company guilty of negligence *per se*, yet that negligence was not the proximate cause of the boy's death, and the plaintiff was nonsuited.

Counsel for plaintiffs made the ingenious argument that if there had been a watchman on the engine as required by the city ordinance he could have seen that a collision between the engine and Knoll's automobile was likely to happen and that Griffith was going to stick to his post too long to get out of the way, and that he would get hurt in consequence. Counsel further advise the court that there is a device on railway engines of convenient access to railway employees at whatever end they may be riding so that an emergency stop can be made. They argue that this collision and its consequences could thus have been averted, if such a watchman had been on the job. To a majority of this court that argument seems too subtle; and a verdict and judgment for $10,000 against the railway company with no better basis for its support cannot be permitted to stand.

Apparently the defendant Knoll has abandoned his appeal and as to him the judgment is affirmed. As to the railway company the judgment is reversed with instructions to enter judgment in its behalf.

HARVEY, J. (dissenting): The view taken of the city ordinance, stated in syllabi 2 and 3 and corresponding portions of the opinion, is, in my judgment, too narrow. It should be remembered that the flagman was not an employee of the defendant railway company. He was rightfully in the street; his duties required him to be there. Obviously the ordinance is a safety measure for those rightfully in or upon the street, whether traveling there, or employed by some one other than defendant, and rightfully working there. Neither do I agree with the statement in the opinion that the tragedy could not have been averted if the watchman had been stationed on the advancing end of the engine. I think the purpose of the ordinance was that the watchman on the advancing end of the engine should do whatever reasonably could be done by him to avoid injury to persons rightfully on the street. May I add that I think it possible the judgment of the court below should have been reversed on other grounds, and I am convinced that the judgment was fully twice as large as it should have been.