## The Union Pacific Railway Company v. Samantha A. Adams.

1. Contributory Negligence; *Demurrer to Evidence.* Where an action is brought to recover for personal injury, and the plaintiff's testimony shows that his own negligence contributed directly to the injury, he has failed to make out a *prima facie* right of recovery, and a demurrer interposed to his evidence should be sustained.

2. Railroad Track; *Duty of Person in Crossing.* It is the duty of a person about to cross a railroad track to make a vigilant use of his senses as far as there is an opportunity, in order to ascertain whether there is a present danger in crossing. A failure to listen, or look, when by taking this precaution the injury might have been avoided, is negligence that will bar a recovery, notwithstanding the negligence of the railroad company in failing to give signals contributed to the injury.

*Error from Douglas District Court.*

Action to recover damages for personal injuries. November 28, 1882, the plaintiff *Adams* recovered a judgment for $2,000 against the defendant *Railway Company.* It brings the case here. The opinion states the material facts.

*J. P. Usher*, for plaintiff in error.

*Geo. J. Barker*, and *J. W. Green*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Samantha A. Adams sued the Union Pacific Railway Company in the district court of Douglas county, to recover for injuries received by her, by being thrown from a spring wagon that was struck by a locomotive of a passenger train operated by defendant on its railroad. It appears that on the 9th day of October, 1880, the plaintiff, in company with Martin Adams, his wife and two daughters, started from the city of Lawrence to go to the home of Martin Adams, in Jefferson county. The team and spring wagon in which they were riding, was driven and owned by Mr. Adams, who, with his wife, sat in the front seat of the wagon, and the plaintiff and the two daughters of Mr. Adams occupied the hind seat. They traveled in a northerly direction near to and east of the defendant's railroad for a distance of two miles, where they intersected an east-and-west road running at right angles with the railroad, which at this point runs nearly north and south. The railroad crossing is about five hundred feet west of this point. Upon the north side of the east-and-west road, where the turn was made, to within eighteen feet of the railroad crossing, there is a high untrimmed hedge fence, which at that time was in full leaf, and to some extent was interlaced with weeds and grass. The plaintiff and her party turned and passed west over this road, driving along at a jog trot, and just as the horses reached the railroad track it was discovered that the passenger train of the defendant was coming down upon them from the north at a rapid rate, when Mr. Adams, the driver, whipped up the horses and endeavored to cross in advance of the train, but the hind end of the wagon was struck by the locomotive, tipping it over, throwing the plaintiff upon the ground, dislocating her shoulder, and fracturing her arm. The plaintiff alleged in her petition that she was injured on account of the negligence of the employés of the defendant on the

train, in failing to sound the whistle eighty rods north of the crossing, as required by the statute; and she also stated that the railroad company had failed to place a notice at this point indicating the location of the railroad crossing.

On the part of the defendant, it was alleged that the plaintiff's injuries resulted solely from her own negligence and that of Martin Adams, with whom she was riding at the time of the collision. Upon the trial, and after the plaintiff had offered her testimony and rested, a demurrer to her evidence was interposed and filed by the defendant, on the ground that no cause of action had been proven by her. The testimony offered by the plaintiff tended to show, and upon this demurrer it must be held to have established, that the whistle of the engine was not sounded eighty rods away from the crossing as required, nor that any signal was given by those in charge of the train until the wagon was discovered by them upon the track, which was almost simultaneous with the collision. The negligence of the defendant, then, must be regarded as proved. The contention of the defendant, however, is that the plaintiff's testimony discloses that her own want of ordinary caution and care directly contributed to the injury. The negligence of the defendant in such a case is not always sufficient to warrant a recovery, and while contributory negligence on the part of the plaintiff is a matter of defense, still if the plaintiff's evidence shows that her injury was the proximate result of her own negligence, she has failed to make out a *prima facie* case, and notwithstanding the negligence of the defendant, the demurrer to the evidence should be sustained. (*Gibson v. City of Wyandotte*, 20 Kas. 158.)

It is now well settled in this state and elsewhere, in cases where the plaintiff seeks to recover for injuries on the ground of defendant's negligence, that if the ordinary negligence of the plaintiff directly or proximately contributed to his injury, he cannot recover unless the injury was intentionally and wantonly caused by the defendant. (*Gibson v. City of Wyandotte*, supra; *Jackson v. K. C. L. & S. K. Rld. Co.*, 31 Kas. 761; *Mason v. Mo. Pac. Rly. Co.*, 27 id. 83; *Corlett v. City of Leaven-

*worth*, 27 id. 673; *Mo. Pac. Rly. Co. v. Haley*, 25 id. 35; *C. B. U. P. Rld. Co. v. Henigh*, 23 id. 347; *Williams v. A. T. & S. F. Rld. Co.*, 22 id. 117; *Artman v. K. C. Rly. Co.*, 22 id. 296; *K. P. Rly. Co. v. Pointer*, 14 id. 37; *L. L. & G. Rld. Co. v. Rice*, 10 id. 426.)

It is equally well settled that it is the duty of a traveler upon a highway about to cross a railroad track, to make a vigilant use of his senses in order to ascertain whether there is a present danger in crossing. This is required not alone for his own safety, but also for the protection of the lives of the passengers upon the railway trains. The traveler who fails to take this precaution is not using ordinary care. How is it in this case? An examination of the plaintiff's evidence we think shows that the plaintiff and her driver were negligent. It appears that the parties drove up in a two-horse wagon, upon a trot, in plain view of the railroad track, without stopping to listen or look for the approach of a train, or taking any precaution whatsoever to learn whether there was danger in then attempting to cross. Both the plaintiff and Mr. Adams, who was driving the team, were familiar with the highway, well acquainted with the crossing, and with the fact that trains were frequently run over the road.

Martin Adams testified as follows:

" *Ques.:* Every one of you knew where the railroad was? *Ans.:* Yes, sir.

"Q. It was right in plain sight of you when you were coming through that sandy road and cut? A. I saw where it was ahead of me.

"Q. You could see the railroad? A. Of course; it was elevated.

"Q. Were you thinking of the train at all? A. I don't recollect that I was.

"Q. You never thought of the possibility of a train until your horses' heads were on the track? A. Don't think I did.

"Q. Weren't you thinking about going on the track? A. I don't recollect of thinking anything particular about the train coming.

"Q. None of you were thinking about the train? A. Not that I know of.

"Q. I will ask you now the question: did you look or listen for the train at all?   A. Not that I know of."

The plaintiff, Samantha Adams, testified:

" *Ques.:* You knew the railroad was there? *Ans.:* Yes, sir, we knew the railroad was there.

"Q. You were not thinking about the train at all?   A. No, sir, I was not.

"Q. You did not hear the cars coming?   A. No, sir.

"Q. You did not hear anything of the train?   A. No, sir, not anything.

"Q. Never thought of it?   A. No, not particularly.

"Q. Did you look for the train in any way?   A. Well, we could not have seen it if we had looked right there.   But we did not look, though.   I did not look.

"Q. Did you listen for it?   A. No, sir."

Counsel say that it would have been unavailing to have looked for the train, as the bank and hedge upon the north side of the road crossing the track obstructed the view so that a train approaching from the north could not have been seen by the plaintiff.   From the plaintiff's testimony we observe, as has been stated before, that the distance from the corner where the party turned west to the railroad crossing was about five hundred feet.   About half way from the corner to this crossing is a cut in the road which extends to within about fifty feet of the railroad, the bank of which, together with the hedge, which was then covered with foliage, made it very difficult for parties passing along to have seen the coming train. It appears, however, from the testimony of several of plaintiff's witnesses, that there were places in the hedge through which the train might have been seen, and outside of this cut in the road it might have been easily seen by standing up in the wagon, and the view of the track was unobstructed from the point where the hedge terminated, which was eighteen feet east of the track.   But if the obstruction had been such as to prevent plaintiff from seeing the track or train, then in the exercise of ordinary care she should have listened for the train, and it appears that the train could have been heard for some distance by giving attention, and listening for a train before

going upon the track. It is true that the wind was blowing in nearly an opposite direction from which the train was coming, but several of plaintiff's witnesses heard the train, and we have no doubt that if the plaintiff or Adams had given heed and listened, they would have discovered its approach and could thus have avoided the accident. In this case, neither the plaintiff nor the driver either looked or listened, although their attention was called to the necessity of caution by seeing in advance of them the track of the railroad.

It has been said that—

"The track itself is a warning of danger, and I think it must be laid down as a principle of law, that persons about to cross a railroad track are bound to recognize the danger, and to make use of the sense of hearing as well as of sight, and if either cannot be rendered available, the obligation to use the other is the stronger, to ascertain before attempting to cross it, whether a train is in dangerous proximity; and if they neglect to do this, but venture blindly upon the track, without any effort to ascertain whether a train is approaching, it must be at their own risk. Such conduct is, of itself, negligence, and should be so pronounced by the courts as a matter of law." (*Railroad Co. v. Miller*, 25 Mich. 290.)

The supreme court of the United States, in speaking of the precautions and care that should be taken by persons about to cross a railroad, and the result of their failure to use such care, said:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars, was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others." (*Railroad v. Houston*, 95 U. S. 697. See also *Henze v. Railway Co.*, 71 Mo. 636;

*Payne v. Railway Co.,* 39 Iowa, 522; *Railroad Co. v. Beale,* 75 Pa. St. 504; *Schaefert v. C. M. & St. P. Rld. Co.,* 62 Iowa, 624; *McCall v. Railroad Co.,* 54 N. Y. 642; *Zimmerman v. H. & St. J. Rld. Co.,* 71 Mo. 476; *Pennsylvania Rld. Co., v. Righter,* 42 N. J. 180; note, and cases cited, on page 226, 2 Am. & Eng. Rld. Cases; 1 Thompson on Negligence, pp. 424, 426, and cases cited.)

Many other authorities like unto these could be cited respecting the care which should be exercised by persons about to cross a railroad track, but a sufficient number have been referred to, to show what the current and weight of authority is; and within the rules there laid down we are constrained to hold that the evidence of the plaintiff showed a plain case of contributory negligence, both upon the part of the plaintiff and that of the driver, Martin Adams.

We think the demurrer interposed by the defendant to plaintiff's evidence should have been sustained. The judgment of the district court will therefore be reversed, and the cause remanded with instructions to sustain the demurrer to plaintiff's evidence.

All the Justices concurring.