No. 20,741.

CLYDE BUNTON, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. AUTOMOBILE—*Crossing Railroad Track—Duty of Driver—"Look and Listen."* Where the jury finds that there is nothing to obstruct the view of a person approaching a railway crossing, nothing to prevent him seeing a train for a quarter of a mile or more, such finding in effect is an expression of the jury's disbelief of his evidence that he looked and listened and saw no train approaching.

2. SAME — *Crossing Railroad Tracks — Findings Show Contributory Negligence Barring Recovery.* Where a person attempts to drive an automobile over a railroad crossing in front of a fast speeding train which he could have seen approaching for a distance of a quarter of a mile or more, and the crossing grade is muddy, steep and slippery, and has a depression of three inches between the rails, whereby his engine loses power and stops in the depression between the rails,

and the train is then so near that it can not be stopped in time to avoid a collision, such person is guilty of contributory negligence which bars his recovery for damages notwithstanding the negligence of the railway company in maintaining the defective crossing.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed March 10, 1917. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*Clyde Souders,* and *Otto Souders,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case adds another instance to the long and melancholy chronicle of railroad-crossing accidents. While the plaintiff and his wife were crossing the defendant's railroad on a rural highway their automobile engine stopped owing to a defect in the crossing, and a Santa Fe train plowed into them and killed the plaintiff's wife; and this action was brought by the plaintiff husband, charging the defendant railway company with the negligence which brought about her death.

Plaintiff alleged that the crossing was defective in that the grade approaching the crossing was too steep; that there was a mudhole at the foot of the grade caused by defendant's negligent drainage, and that there was a depression of about three inches inside the planking between the rails, and that this condition of the crossing had existed for a long time. He also alleged that the day was cloudy and foggy, and a light rain was falling, and the wind was blowing from the south. The plaintiff had chains on his automobile tires, and approached the crossing from the east on low gear—

"That on account of the said mudhole, and the steepness of the said grade and its slipperiness, the automobile of the plaintiff lost power and when the front wheels struck the ground after dropping the three inches on account of the ground between the planks being lower than the planks the said jolt stopped the said car with the front wheels over the east rail and plank. That while in the said position one of the trains of the defendant . . . came from the north at a very high and dangerous rate of speed, to wit: about 60 miles an hour and

struck the automobile of the plaintiff and the plaintiff and his wife and threw the said automobile, the plaintiff and plaintiff's wife to the south and east, the wife of the plaintiff being thrown about 60 feet from the point where she was struck. That the said striking by the said train and the throwing of the plaintiff's wife and the force with which she struck the ground killed her. That had the said automobile not been slowed down and stopped, as aforesaid, by the condition of the said mudhole and the said crossing the said automobile and the plaintiff and plaintiff's wife would have crossed the said tracks in safety, before the said train arrived at the said crossing."

The general verdict was for the plaintiff, and the jury answered special questions:

"1. Q. If you find that any negligence of defendant caused the collision in question, state in what such negligence consisted. Ans. In defective crossing.

"Q. 3. If you find that the crossing was defective was one of the defects in the crossing the fact that the railroad company had permitted the space between the planks running lengthwise of and inside the rails to become from two to four inches lower than the tops of the planks? A. Yes.

"Q. 4. If you find that the crossing was defective, was the crossing defective in this, that it was too narrow and that the approach from the east thereto was too steep? A. Yes.

"Q. 10. Did the plaintiff and his wife exercise ordinary care and reasonable prudence in attempting to cross the railroad track at the time and place where the accident happened, under all the circumstances and facts connected with this particular crossing? A. Yes."

Certain other special findings in response to defendant's questions were made:

"2. Q. State the distance a train could have been seen approaching from the northward in the daytime by a person looking for same standing in the public highway 20 feet east of the east rail of said railroad track. Ans. About a quarter mile.

"Also by one standing in the highway 30 feet east of said east rail. Ans. About a quarter mile.

"Also by one standing in the highway about 60 feet east of said rail. Ans. About a quarter mile unless obscured by trees.

"Also by one standing in the highway 75 feet east of said east rail. Ans. About a quarter mile unless obscured by trees.

"Also by one standing in the highway about 175 to 180 feet east of said east rail. Ans. About a quarter of a mile unless obscured by trees.

"3. Q. How far was plaintiff from the crossing when he first saw the approaching train. Ans. He was on the track.

"4. Q. If a person were traveling westward in the daytime along the public highway in question for several hundred feet west [east] of

the crossing in question, could they have seen a railroad train at various points while it would be moving between the crossing and a half mile north of the crossing, providing such person were taking the pains to carefully look for same? Ans. Yes.

"Substitute for No. 5. How far could the rumble and noise of the approaching train in question have been heard by one carefully listening for same while stationed at or near the crossing in question at the time in question. Ans. Don't think one could hear train while driving car and wind blowing from the south as it was.

"6. Q. After the engineer or fireman first discovered that the automobile would probably not be stopped before going upon the crossing, what could they have done that would have prevented the collision? Ans. Nothing.

"7. Q. Had plaintiff passed over this crossing as often as twice a month for three years prior to the time of the collision in question? Ans. Yes.

"10. Q. Was the railroad track straight and the country level for a mile north and south of said crossing? Ans. Yes."

The substance of defendant's assignment of errors is that the plaintiff's wife met her death through the sole negligence of the defendant, and that there was error in the trial court's instructions.

The duty to keep a sharp lookout for trains at a public crossing has often been expounded by this court. A railroad crossing is itself a danger signal. One who proposes to cross a railroad must look and listen. It is not required, in this state, that a person must necessarily stop, in order to look and listen, unless the surroundings and circumstances demand that unusual prudence. If the circumstances do demand such prudence, then there is a duty to stop, look and listen. (*Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742.) While the plaintiff testified that he did keep a sharp lookout, the jury's special findings are that at twenty feet and at thirty feet from the crossing there was nothing to prevent the plaintiff from seeing the oncoming train. This in effect is a finding that he did not look to see if a train was approaching. Put more bluntly, the jury disbelieved the plaintiff on this phase of the evidence. At still greater distances from the crossing he could have seen the train while it was "moving between the crossing and a half mile north of the crossing." The jury's answer to defendant's fourth question shows clearly that if plaintiff had exercised his elementary duty he could have seen the train not only at twenty

feet and at thirty feet from the crossing, but for some considerable distance still further away. It is pleaded and it was testified to that the weather was misty, foggy and rainy, but the weather conditions were not very bad, since a person on the highway approaching the crossing could see a train a quarter of a mile away and from that to a half a mile. But it could not be declared that any additional duty would rest on the defendant in the operation of its trains in the open country towards travelers at such crossings, on account of the mist, fog or rain. We have not heard it suggested that the speed must be reduced and railroad trains kept under such control that they may be stopped before they reach a railroad crossing in the open country to prevent accidents in misty or foggy weather. (*Gage v. Railway Co.,* 91 Kan. 253, 137 Pac. 938, Ann Cas. 1915 B, 410, and Note.) The trains must be operated with dispatch. The public demands that service; and that this may be done, the duty to avoid getting run into at a railroad crossing in the open country is chiefly imposed upon the person who seeks to cross the railroad track—not out of regard for the railroad company, but because expedition of railroad operation is exacted by the public at the hands of the railroad company.

Now this plaintiff could have seen this train coming. At twenty feet and at thirty feet before reaching the railroad tracks there was no obscuration of his view by trees. He could have seen the train at any distance up to a quarter of a mile, perhaps further; that is settled by the jury's finding. But heedless of his own and his wife's safety, he drove his car on the track, without having positively assured himself that there was no train approaching.

Plaintiff's direct testimony reads:

"Q. Now, what happened when you got up on the track, if anything, Clyde? A. Well, the front wheels dropped down in that hole there, and I don't remember of a living thing after that."

Of course not. The train was right on him, moving at fifty or sixty miles an hour. The plaintiff thought the train was 150 or 200 feet away when his car stopped. A train going sixty miles per hour moves eighty-eight feet per second. If plaintiff's car had not lost power going through the mudhole and up the steep, slippery grade and stopped on the track his

wife might have escaped death through his heedlessness by about two or three seconds! The plaintiff sought to negotiate the crossing ahead of the train by too narrow a margin, however negligent the railway company may have been in permitting a depression of three inches between the rails and planks at the railroad crossing or however steep the grade and however muddy the approach to the crossing might be. Assuming that the plaintiff did not know of the depression between the rails, the mudhole and steep, slippery grade were in plain view when he attempted to cross in front of the speeding train, and the plaintiff testified that he was an experienced driver of an automobile, how then can his negligence in this situation be excused?

If the plaintiff, in the exercise of due care, had assured himself that there was no train coming within reasonable distance and had then attempted to cross and had been stopped and held by this hole or depression in the track until a train not then in sight or hearing within a reasonable distance had come along and wrought this damage, of course the railway company would be liable (*Baughman v. Shenango & Allegheny Railroad Co.*, 92 Pa. St. 335; *Retan v. Railway Co.*, 94 Mich. 146), but that is not the case we have to consider. The Oklahoma case (*St. Louis & S. F. R. Co. v. Model Laundry*, 42 Okla. 501) is governed by a peculiar provision of the Oklahoma constitution which is at variance with the Kansas law of contributory negligence (*Jones v. Railway Co.*, 85 Kan. 313, 319, 116 Pac. 496). No prudent man would attempt to cross a railroad track in front of a train going sixty miles an hour on a margin of two or three seconds for safety; still less where the road was muddy and the crossing grade steep and slippery. Under the jury's special findings, under the decisions of this court, and under the most elementary notions of justice, it can not be said that the plaintiff in this case was free from contributory negligence, and this bars his recovery notwithstanding the concurrent negligence of the railway company.

"As a general legal proposition, where both parties are guilty of gross negligence, the plaintiff can not recover damages sustained by the negligence of the defendant." (*Mason v. Mo. Pac. Rly. Co.*, 27 Kan. 83, syl. ¶ 1; *U. P. Rly. Co. v. Adams*, 33 Kan. 427, 6 Pac. 529; *Jacobs v. Railway Co.*, 97 Kan. 247, 252, 154 Pac. 1023; *New York Cent. & H. R. R. Co. v. Maidment*, 168 Fed. 21; *Northern Pac. Ry. Co. v. Tripp*, 220 Fed. 286.)

In *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742, it was said:

"The driver of an automobile must exercise care for himself, and because of the character of the machine that he is driving—a heavy steel structure, dangerous to others—he must exercise some degree of care for the safety of those rightfully traveling on a railroad train when he is about to cross the track. His machine is easy of control. It will stand where he leaves it. It will not get frightened. If by his negligence he should derail the train he would be responsible to passengers injured, even though the men in charge of the train were guilty of negligence, if the rule applied to a passenger in an automobile when the driver of the automobile is guilty of negligence is applied to passengers on a train." (p. 797.)

While the jury acquitted the plaintiff of negligence, the other special findings reduce that point to a question of law. It is needless to examine the instructions. The judgment is reversed and the cause remanded with directions to enter judgment for the defendant.