No. 28,758.

No. 29,327.

THE CITY OF TOPEKA, *Appellee,* v. THE INDEPENDENCE INDEMNITY COMPANY, of Pennsylvania, *Appellant.*

(287 Pac. 708.)

Opinion filed June 7, 1930.

*W. E. Atchison* and *Clad Hamilton,* both of Topeka, for the appellant.

*J. E. Addington, Irl H. Byler, Ralph T. O'Neil* and *J. D. M. Hamilton,* all of Topeka, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action brought by the plaintiff to recover on the official bond of the commissioner of finance and revenue of the city of Topeka on account of the loss of city funds which were on deposit in the Peoples State Bank of Topeka at the time it

became insolvent and was closed. Plaintiff recovered, and defendant appeals.

The plaintiff filed its petition charging neglect of duty against the commissioner of finance and revenue, Frank L. Stevens, and attached to the petition a copy of the bond given by the defendant as surety for the commissioner. Thereafter a motion to strike and a demurrer were filed by the defendant. These were overruled, and the defendant appealed from these orders. This appeal was docketed as No. 28,758 in this court. Subsequently the defendant filed its answer and amended answer. The plaintiff replied, and upon the issues joined the cause was tried to a jury. The jury returned a general verdict against the defendant and made special findings of fact. Upon these the trial court rendered judgment against the defendant, and defendant appeals therefrom. This last appeal is No. 29,327 in this court. They have been submitted together and will be so considered.

The petition charged, in substance, that one Frank L. Stevens, during all of the times complained of in the petition, was the duly elected and qualified commissioner of finance and revenue of the plaintiff city, and that the defendant had executed his official bond, a copy of which was attached to the petition; that during the time the bond was in full force and effect the commissioner had failed, neglected and refused to faithfully perform and discharge the duties of his office. Several grounds of negligence were charged, and it was alleged that through his neglect of duty the city had sustained a loss of approximately $65,000. The petition further alleged that demand had been made upon the defendant to pay the face amount of its bond of $10,000, but that payment had been refused. Judgment was sought against the defendant for the amount of its bond and interest. The commissioner of finance and revenue was not made a party defendant.

Defendant filed a motion to strike and a demurrer to the petition, which were overruled, and subsequently the defendant answered, pleading, among other things, a general denial; admitting execution and delivery of the bond sued upon by plaintiff; admitting that at the time of the execution of the bond the commissioner, Frank L. Stevens, was the duly elected commissioner of finance and revenue of the plaintiff city, but denied specifically that he had performed, or been guilty of any act constituting a violation of the conditions of the bond, and denied that it assumed any liability for any acts alleged in the petition which were required by law to be performed

by Frank L. Stevens as commissioner of finance and revenue of the plaintiff city.

The evidence showed, in substance, that the Peoples State Bank began business in 1925 and that it became insolvent and was closed on December 3, 1926; that soon after the bank opened, the city of Topeka began to use it as a depository, and according to a report made by a certified public accountant on April 1, 1925, the city had on deposit with that bank $15,049.07; that the bank never was properly designated as a city depository by resolution of the board of commissioners, as required by city ordinance; that detailed written reports were submitted by the city auditor from time to time to the board of commissioners, which showed various sums of money on deposit with the Peoples State Bank, and that the board of commissioners knew the bank was being used as a city depository for more than a year prior to its failure.

The record further shows that about November 15, 1926, one Newell Abrahams came to the office of Frank L. Stevens, who was then commissioner of finance and revenue of the city of Topeka, and told him in substance that he (Abrahams) understood that the Peoples State Bank was in very bad financial condition. He asked Stevens how much money the city had on deposit with the bank. Stevens stated that the amount on deposit at that time was approximately $75,000. Abrahams then said: "Well, Frank, I question very much if you drew a check against that bank for $25,000 if it can be honored." He stated further that it was "purely a rumor." Abrahams was in the insurance business and represented the bonding company which executed the bond for the city treasurer which at that time was in effect, and this fact was known to Stevens. The evidence shows that after the interview with Abrahams, Commissioner Stevens studied over the matter. It was late in the afternoon. He knew the city attorney was out of town, so he could not consult him. He went across the hall to see the mayor, but found the mayor was out of the office. He came back to his own office and thought some more; then went across the hall to the city treasurer's office and told her to check the November pay roll against the Peoples State Bank. This was about the middle of November and the pay roll of the city is made up on the 1st and 15th of each month. The checks which are made up about the 15th are usually delivered about the 20th of the month. The treasurer was working on the November pay roll, and the record shows that the current pay roll

amounted to $26,374.97, and that an ordinance appropriating that amount for the current pay roll was passed on November 19, 1926. Stevens did not tell the city treasurer why he wanted her to check the November pay roll against the Peoples State Bank. After he returned to his own office he told the city auditor, Clyde Knowlton, that he had directed the city treasurer to check the city pay roll against the Peoples State Bank. The auditor made no comment. The record shows that thereafter Stevens had no further conversation with the city treasurer, the city auditor or any of the city commissioners about the Peoples State Bank until after it was closed on December 3, 1926. The city treasurer testified that when Stevens told her to check the November pay roll out of the Peoples State Bank she asked him: "Are you leery of that bank, Mr. Stevens?" and he replied: "Oh, no." She proceeded to carry out his orders and had checked out $5,200 on the pay roll from the Peoples State Bank when Knowlton, the auditor, came to her and told her not to draw any more money out of the Peoples State Bank. After that time, at the request of the city auditor, she deposited $5,200 in the Peoples State Bank, and at a later date, at his request, deposited an additional sum of $10,000 in the Peoples State Bank. She never told Mr. Stevens about these deposits, as she regarded Knowlton as being Stevens' messenger. She testified further that Knowlton had frequently given her instructions relative to city funds.

On November 18, 1926, the city had on deposit with the Peoples State Bank $76,010.41. On that date the cash and sight exchange of the bank was $36,297.31. When the bank closed on December 3, 1926, the city had on deposit approximately $86,000.

The appellant raises twenty questions on appeal, all of which are interesting, but to keep this opinion within bounds we will not attempt to discuss each in detail. We will endeavor, however, to treat the various grounds urged as error.

With the general verdict the jury returned special findings as follows:

"1. Did Frank L. Stevens, commissioner of finance and revenue of the city of Topeka, fail or neglect to perform or discharge or fulfill any of the duties of the office of commissioner of finance and revenue of said city, during his term of office and prior to December 3, 1926? A. Yes.

"2. If you answer the foregoing question in the affirmative then state: (a) In what respect or manner he failed to perform his official duties, and (b) the date or dates thereof. A. (a) In failing to see that his instructions to subordinates were carried out; (b) between November 15, 1926, and December 3, 1926.

"3. Did Frank L. Stevens, as city finance commissioner, request the city treasurer, on or about November 15, 1926, to check from the Peoples State Bank the money with which to pay the November 15, 1926, pay roll? A. Yes.

"4. If you answer the last question in the affirmative, then state what amount, if any, the city treasurer checked out to pay on said pay roll. A. $5,200

"5. Was the city treasurer requested by the city auditor not to check out the November 15, 1926, pay roll from the Peoples State Bank after she had been requested by Frank L. Stevens, as city finance commissioner, so to do? A. Yes, according to the evidence.

"6. Did the city treasurer subsequently make two deposits of city funds in the Peoples State Bank, in the sum of $10,000 and $5,200 at the request of the city auditor, after Frank L. Stevens, as city finance commissioner, had requested said treasurer to check out the November, 1926, pay roll from said bank? A. Yes."

Numerous grounds of negligence on the part of Commissioner Stevens were alleged by the plaintiff, and some evidence was introduced on some of these grounds, but the above findings eliminate all except the one count of negligence found by the jury. See the following cases: *Pullin v. Railway Co.*, 96 Kan. 165, 150 Pac. 604; *Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590; *Rose v. City of Gypsum*, 104 Kan. 412, 179 Pac. 348; *Morlan v. Atchison, T. & S. F. Rly. Co.*, 118 Kan. 713, 236 Pac. 821; *Clark v. Atchison, T. & S. F. Rly. Co.*, 127 Kan. 1, 272 Pac. 128.

It is to be noted that the act of negligence found by the jury is that Commissioner Stevens, between November 15, 1926, and December 3, 1926, failed to see that his instructions to subordinates were carried out.

Did this constitute neglect of official duties for which the defendant bonding company is liable?

The duties of each commissioner under the commission form of government are fixed by the statutes. The evident purpose of the plan is to divide the business of the city into departments—to place a commissioner at the head of each department and make him directly responsible for that portion of the city's business which falls within his department.

R. S. 13-1808 fixes the duties of the commissioner of finance and revenue. It provides, among other things:

"The 'commissioner of finance and revenue' shall have under his special charge the preparation of an annual budget and the levy of taxes and the collection of revenues belonging to such city, from whatever source the same may be derived, and the management of the finances of such city. . . ."

R. S. 13-1805 provides that the mayor and each commissioner

shall before entering upon their duties give a good and sufficient bond, which in a city of 30,000 or more shall be in the sum of $10,000. This section provides that the bond shall be "conditioned for the faithful discharge of his duties and that he will save such city harmless from all loss caused by his neglect of duty or misfeasance in office or for the willful expenditure of any moneys of such city in violation of law."

The appellant contends that the ground of negligence found by the jury does not show a neglect of any official duty assigned to the commissioner of finance and revenue by the statute fixing his duties.

The appellee, on the other hand, takes the position that under the clause—"and the management of the finances of such city"—the conduct of the commissioner shown by the evidence which supports the finding made by the jury, does show a neglect of official duty by the commissioner.

The appellant contends that the board of commissioners is a little legislature; that each commissioner is to consider matters with special reference to his department and to report thereon to the entire commission, giving his best judgment as to what the body should do. It is suggested that no one ever thought of suing a member of the legislature, or of congress, for negligence and that the members of this little legislature—the board of commissioners— cannot be held for negligence. If the negligence relied upon for recovery was an act or omission in connection with the passage of an ordinance (legislation), it is true that the commissioner could not be held accountable, but the statute fixing the duties of the commissioner of finance and revenue (R. S. 13-1808, *supra*) assigns to him certain administrative duties, among others the "management of the finances of such city." If the theory of defendant were correct, then it is very difficult to conceive how there could ever be any liability for negligence on the part of a city commissioner, and the act of the legislature (R. S. 13-1805) in requiring each commissioner to give a bond conditioned for "his neglect of duty" would become meaningless and of no effect.

The appellant further takes the position that the city treasurer is a very important officer; that he is given important duties under the statutes; that he is elected by the entire board of commissioners, and that in this case the city treasurer had the handling of the money and the finance commissioner had nothing to do with it.

It is further contended by the appellant that the city treasurer is not a subordinate of the finance commissioner because he is the appointee of the entire board of commissioners, and that even if he were a subordinate, a public official is not liable for the failure of a subordinate to observe the law. In support of this position the appellant cites 5 Thompson on Negligence, 2d ed., § 6378, pp. 833, 834; Story on Agency, § 319; *Robertson v. Sichel,* 127 U. S. 507. While it is true that the city treasurer has important duties to perform in connection with the handling of the funds of the city, yet it must not be overlooked that the "management of the finances" is vested in the commissioner of finance and revenue. Management has been defined in the case *In re Sanders,* 53 Kan. 191, 197, 36 Pac. 348. The court quotes with approval the definition of "management" in this opinion as follows:

" 'Management' is defined as 'government; control; superintendence; physical or manual handling or guidance; the act of managing by direction or regulation; administration, as the management of a family, or of a household, or of servants, or of great enterprises, or of great affairs.' "

Now if the appellant's contention that the city treasurer is not a subordinate of the commissioner of finance and revenue is tenable, then it would logically follow that the city treasurer is not the subordinate of any of the other commissioners. Is it logical to say that the city treasurer, after being appointed by the board of commissioners, stands out independently from that board as an official of the city, free and independent of any supervision or control by the board of commissioners? This would in effect make the creature greater than the creator. If the city treasurer is the subordinate of the board of commissioners, then it necessarily follows that he is the subordinate of each commissioner. It is not reasonable to assume that the city treasurer could not be subject to instruction or guidance except through a meeting of the entire board of commissioners. If this position were carried out to its logical conclusion it would mean that if any one of the commissioners had some act which appeared to be necessary and proper and advisable to be done in the treasurer's office, he could not make a suggestion or criticism or request without first having a meeting of the board of commissioners and getting them to make an official order on the city treasurer. This is contrary to the spirit of the commission form of government because that plan was designed to do away with red tape and bring about a greater efficiency in city government.

Further, the fact that the legislature placed the "management of the finances of such city" under the commissioner of finance and revenue, and the fact that the city treasurer is engaged primarily in working with, handling and caring for the finances of the city, would indicate a clear intention on the part of the legislature to fix in the office of the commissioner of finance and revenue a supervisory duty over the city treasurer in financial matters.

The appellant contends—and correctly so—that it can only be held liable for a neglect of duty which is properly imposed by law upon the commissioner of finance. In support of this it cites 46 C. J. 1068, § 399, in which is found the following:

"Liability on an official bond arises as a rule only with reference to acts of the officer which pertain to some function or duty which the law imposes upon his office."

It further cites 22 R. C. L. 506, § 190, in which it is said:

"But where an individual is injured by the private and personal acts of an officer, and not by acts which he has done either by virtue of his office or under color of his office, his sureties are not liable."

The appellant contends that since the law does not specifically impose any duty on the commissioner of finance and revenue to direct the treasurer respecting the care and safe-keeping of city funds, the negligence found by the jury in this case is not such a neglect of duty as makes the appellant liable on its bond.

This, then, is the real question in this lawsuit: Does the negligence found by the jury constitute an act or omission of the commissioner of finance and revenue which comes within the condition of the bond?

The condition of the bond reads:

"Now, therefore, if the said Frank L. Stevens shall faithfully perform, discharge and fulfill all the duties of the office of commissioner of finance and revenue of the said city of Topeka, Shawnee county, Kansas, and shall save such city harmless from all loss caused by his neglect of duty or malfeasance in office or willful expenditure of any moneys of such city in violation of law and shall render a true and faithful account of all moneys that may come into his hands by virtue of his said office during his continuance therein, then this obligation shall be void; otherwise to be and remain in full force and effect."

Does the negligent conduct found by the jury constitute a neglect of duty? The appellant contends strenuously that since the city treasurer is assigned by law the important duty to "safely keep all moneys intrusted to his care" that he is thereby made the accounting officer; that the commissioner of finance, therefore, had no

duty in connection with the handling and safe-keeping of money. Further, that "management of the finances of such city" refers to a wider zone of action than "safely keeping" the funds. That the commissioner had the duty of making general plans for the financing of the city and was politically responsible to the people for their success. Appellant argues further that the fact that the commissioner of finance and revenue is required to give only a $10,000 bond, while the city treasurer is required to give a $50,000 bond, indicates clearly that the commissioner was not to be held accountable for the handling of the city funds in any manner.

We find nothing inconsistent in the fact that two officers of a city may be assigned certain duties with respect to the same subject matter. There is nothing inconsistent in permitting the treasurer to deposit funds and in giving the finance commissioner the duty of "management of finances." In 43 C. J. 737, § 1254, it is said:

"Power of a certain department is not necessarily inconsistent with the exercise of jurisdiction over the same subject matter by other municipal authorities. . . ."

The difference in the size of bonds of the respective officers is a matter for the sound wisdom of the legislature. Doubtless it felt the opportunities for embezzlement and misappropriation of funds were greater in the office of the treasurer than in that of the commissioner of finance. Hence the difference in size of bonds.

We cannot agree with the appellant's interpretation of the word "management." As used in the statute "management" implies action. The manager of a corporation is the man actively in charge of its business. We can think of the president of a corporation as being in a more or less inactive position—one having little to do with the actual business affairs of the company—but we think of the "manager" as being the man on the job, always in action; "managing" the business. Certainly in this case, unless we approve the interpretation of the word given to the jury by the trial court and previously by this court, it would become practically meaningless. Manifestly "management" as used in the statute requires something more of the commissioner of finance and revenue than that he sit in his office and twiddle his thumbs and glance over the quarterly or monthly reports of the treasurer in a cursory manner. It would seem that after having received the information from Mr. Abrahams ordinary prudence should have prompted Commissioner Stevens to confide in the city treasurer or to consult the other commissioners— to act. But he sat idly by and let a few weeks pass without saying

anything to the other commissioners or anyone else other than the treasurer and the auditor. If he was so afraid of circulating a rumor about the bank as he testified at the trial, he could easily have asked the mayor to call an executive session of the board of commissioners. The treasurer could have been invited into this meeting. The whole matter could have been gone over and the treasurer could have been given instructions which would doubtless have saved the city more than the amount of the commissioner's bond. If such neglect of duty as is shown by the record in this case does not impose a liability, then the requirement of the statute that the commissioner of finance and revenue give a bond indemnifying the city against his neglect of duty affords no protection to the city. The giving of the bond, so far as neglect of duty is concerned, becomes an idle gesture—a source of revenue without risk for surety companies.

The appellant calls attention to R. S. 21-2452, prohibiting the circulation of false rumors about banks with the intent to injure their financial condition, and to the testimony of the commissioner to the effect that he knew of this statute and that that was why he did not tell the treasurer why he wanted the money checked out; that he did not want to spread a rumor and cause a run on the bank. This was a commendable spirit, but the trouble with his conduct was that it did not measure up to the "prudence, caution and attention which careful men usually exercise in the management of their own affairs." (22 R. C. L. 461, § 124.)

The court properly instructed the jury on the degree of care required of an official. The jury decided that Commissioner Stevens did not exercise that care, and was therefore guilty of neglect of duty.

The appellant makes the further contention, however, that the negligence as found by the jury was not the proximate cause of the loss to the city. Upon this point the record shows that after the commissioner told the city treasurer to check out the current pay roll, she actually did check out $5,200; that subsequently she made a deposit of $5,200 and another deposit of $10,000. If the commissioner in the discharge of his duties in the management of the finances of the city had followed up his instructions, if he had exercised that care required by the law, which the jury found he did not exercise, then it is clear that the city could have retained at least the $5,200 which had been checked out against the pay roll, and the two subsequent deposits of $5,200 and $10,000. This makes

a total of $20,400 which was lost because of the negligence of the commissioner found by the jury. We think that under the evidence the jury fairly and correctly inferred and concluded that the negligence, as found by the jury, caused the loss to the city of more than the face amount of defendant's bond, and the verdict against the defendant was a proper one.

We have examined the claims of error urged by the appellant, both as to the refusal and in the giving of instructions by the court. We have also noted the contention of appellant that the instructions of the court gave undue prominence to plaintiff's side of the case. Considering the instructions of the court as a whole, we do not believe that these objections are well founded.

We find no reversible error, either in the refusal or in the giving of instructions. Neither do we find that the ruling of the court in overruling defendant's motion to strike and demurrer to plaintiff's petition were erroneous.

The judgment is affirmed.