No. 29,326.

OPAL H. VANCE, *Appellant,* v. THE UNION PACIFIC RAILROAD COMPANY, *Appellee.*

(298 Pac. 764.)

Opinion filed May 9, 1931.

*C. L. Kagey, Leon W. Lundblade* and *L. M. Kagey,* all of Beloit, for the appellant.

*T. M. Lillard, Bruce Hurd, O. B. Eidson,* all of Topeka, *C. L. Hunt* and *Frank Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: There was a collision of the automobile of plaintiff with a motor train of the Union Pacific Railroad Company, in which the automobile was destroyed, and plaintiff is asking damages for the loss of the automobile. The collision occurred

within the city limits of Concordia at a grade crossing of Kansas avenue over the railroad. Plaintiff introduced her evidence and defendant demurred thereto on the ground that plaintiff had failed to prove a cause of action against defendant. The court sustained the demurrer and gave judgment for defendant. Plaintiff appeals.

In her petition plaintiff alleged that when Bert H. Vance, the husband of the plaintiff, drove upon the crossing the automobile was struck by a railroad train, killing Mr. Vance and demolishing the automobile; that the accident was caused by the negligence of the railroad company, in that it was running at an excessive speed over the crossing in violation of an ordinance of the city; that the approach to the crossing from the north was steep and had been allowed by the defendant to remain in that condition for a number of years; that there were buildings and a hedge of trees on the north side of the railroad that obstructed the view so that a train traveling from the east could not be seen by the driver of an automobile until he was within seventy-five feet of the crossing and because of the steep grade he could not safely stop his automobile within sixty feet of the crossing, and that defendant knew that if it failed to observe the city ordinance as to speed it could not stop the train to avoid a collision with an automobile crossing the track about that time. It was also alleged that the train was not equipped with sufficient brakes so that the train could be stopped in a reasonable distance in the event that an automobile was driven upon and over the crossing, and further that the engineer was guilty of negligence in failing to keep a lookout for the crossing, in driving his train at a speed of twenty miles per hour and in not blowing the whistle until it was too late to be heard by the driver of the automobile before going upon the track. The city ordinance provided that engineers should not run trains through the city at a speed in excess of ten miles an hour.

Defendant insisted that the accident was caused by the negligence of the driver of the car, and the fact that the train was running at a speed in excess of that permitted by the ordinance was not a contributing factor and would not of itself warrant a recovery by plaintiff. It insists that evidence shows that the driver of the automobile drove it up to the crossing at a speed of from twenty to twenty-five miles per hour, until he got within a few steps of the north rail and he then tried to turn the car towards the east, the direction the train was going, but did not turn the car soon enough or far enough to

clear the north rail, and was struck. As to the failure of the engineer to blow the whistle when he first saw the automobile, there is a claim that there was no evidence to the effect that he did not sound a warning when he was some distance back of the crossing. He did sound his whistle when he was twenty to thirty steps from the crossing and continued to do so until the automobile was struck. Measurements of distances were given by witnesses in steps and the evidence of plaintiff is that the engineer blew his whistle and rang the bell when he was from twenty to thirty steps from the crossing. Whether or not he had sounded his whistle at an earlier time was not shown. The court, in passing upon the demurrer, after speaking of the distance from the crossing when the engineer sounded his whistle, said:

"Now, the deceased is presumed to have seen and heard what he could have seen and heard, and had he been looking, there was nothing at that point to obstruct his vision at the point he was, as I read the testimony, and therefore, the duty was on him to stop because a railroad track is a sign of danger to anyone approaching, and it was the duty of the deceased to stop his car at that point, and therefore it seems to me as a matter of law that he not having done that I cannot submit the question to you to decide whether it was the railroad company's fault, and they cannot, of course, be held liable in this case unless the accident was caused by their own negligence, so I am deciding as a matter of law that I should not submit the question to you, and I am therefore sustaining the demurrer, and you are discharged from further consideration of this case."

We think the court was warranted in sustaining the demurrer to plaintiff's evidence. The only negligence shown and apparently the only one upon which plaintiff relies or has any ground to rely, is that the train was running at a speed in excess of that prescribed in the city ordinance. It is a well-established rule of law that the violation of the city ordinance regulating the rate of speed of trains within a city imposes no liability on the railroad company for an injury to others unless the violation was the efficient or proximate cause of the injury. (*Williams v. Electric Railroad Co.*, 102 Kan. 268, 170 Pac. 397.)

This appears to be another case of driving a car or other vehicle in front of a moving railroad train without the driver stopping or taking any precaution for his own protection or that of the vehicle he was driving. It was shown that the driver was familiar with the crossing, had driven over it three or four times every week, and that he ordinarily had stopped and looked for trains before driving upon

the crossing. On this occasion he failed to stop·or look. If he had looked he could have seen the coming train and in time to have stopped before entering upon the track, and could have seen the train as far at least as the engineer could have seen him approaching the track. The engineer naturally would assume that the driver of the car approaching a railroad track would stop his automobile and would not drive in front of a moving train, and when the engineer saw that the driver was not taking any precautions he not only blew his whistle but threw on the emergency brake and did what he could to prevent the collision. Granting that the defendant was negligent in the operation of his train, it is manifest that there was contributory negligence on the part of the driver. The track of the railroad itself was a warning of danger, and, besides, the driver, who was familiar with the crossing and knew that trains were likely to pass at any time, took an obvious risk when he drove so close to the track that he was struck by the moving train. Such a lack of care on his part precludes a recovery for the resulting destruction of the automobile. (*U. P. Rld. Co. v. Adams,* 33 Kan. 427, 6 Pac. 529; *Clark v. Mo. Pac. Rly. Co.,* 35 Kan. 350, 11 Pac. 184; *C. K. & W. Rld. Co. v. Fisher,* 49 Kan. 460, 30 Pac. 462; *A. T. & S. F. Rld. Co. v. Priest,* 50 Kan. 16, 31 Pac. 674.) If the driver had given heed to the obvious danger and taken the ordinary precautions required of drivers approaching a railroad crossing, there would have been no collision or loss. The fact that there was a declining grade of the street approaching the railroad did not prevent the driver from slowing up or stopping the automobile if he had exercised ordinary precautions in the approach.

In regard to the excessive speed of the train, it appears that when the engineer discovered that the driver was recklessly driving upon the track he used all appliances and care to avert the collision, and it further appears that even if the railroad train had been running at a ten-mile rate, the speed permitted by the city ordinance, the collision would have occurred due to the situation at the time and the negligent approach to the crossing by the driver. (*Williams v. Electric Railroad Co.,* supra.) In that case it was further said:

"The rule in this state is that when one is about to cross a railroad track, and cannot otherwise assure himself that he may safely do so, he must stop, look, and listen. (*Bunton v. Railway Co.,* 100 Kan. 165, 168, 163 Pac. 801; *Burzio v. Railway Co.,* post, p. 287, just decided, and citations therein.) Such, indeed, was the general rule in the cases of pedestrians and horse-drawn vehicles before the coming of automobiles. (*A. T. & S. F. Rld. Co. v.*

*Townsend,* 39 Kan. 115, 17 Pac. 804; *Railroad Co. v. Willey,* 60 Kan. 819, 58 Pac. 472.) With the coming of the automobile, a highly scientific invention and easy of control, and with its great weight and steel construction and its consequent capacity for imperiling the traveling public in case of collision, the courts have been compelled to develop a more rigid rule, or rather to insist more rigidly upon the application of the old rule, touching the duty of self-preservation imposed on those about to cross a railway track in such a vehicle. (*Wehe v. Railway Co.,* 97 Kan. 794, 156 Pac. 742; *Jacobs v. Railway Co.,* 97 Kan. 247, 154 Pac. 1023; *Cathcart v. Oregon-Washington R. & Nav. Co.,* [Ore.] 168 Pac. 308.)" (p. 271.)

In view of the conclusion reached the questions raised by the defendant as to the admission of evidence taken at a coroner's inquest need not be considered. Assuming that the evidence was admissible, the decision must be that upon all the evidence received on behalf of plaintiff she failed to make a case establishing a right of recovery

The judgment is affirmed.