No. 30,717.

Wilma Esther Brim, Byron Alvin Brim and Leonard Robert Brim, Minors, by John S. Forbeck, Guardian, *Appellees*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant*.

(12 P. 2d 715.)

Opinion filed July 9, 1932.

*William R. Smith, Alfred A. Scott, C. J. Putt,* all of Topeka, and *W. L. Huggins,* of Emporia, for the appellant.

*I. T. Richardson* and *C. C. McCullough,* both of Emporia, for the appellees.

The opinion of the court was delivered by

Dawson, J.: Here is another railroad-crossing case.

On December 16, 1930, one Blaine Byron Brim was killed at defendant's railway crossing on a township road about a mile east of Emporia. The railway thereabout runs nearly east and west and the township road north and south. There was a gravel pit at some distance south of the railway, and for a week or more the deceased had been engaged in hauling gravel in a motor truck from the pit to some

point north of the railway. He hauled some twenty loads each day. It was while proceeding northward over the crossing with a truck load of gravel that Brim was struck and killed by defendant's westbound train.

This action was brought in behalf of the minor children of Brim. The petition charged that defendant negligently permitted growing vegetation on the right of way to obscure the view of an approaching train, that defendant failed to maintain the grade crossing in conformity with the statute, and failed to sound the whistle as a warning of the approaching train; and it was also alleged that defendant's employees were guilty of wantonness in operating the train.

Defendant's answer was a general denial and a plea of contributory negligence.

At the trial there was testimony and photographic evidence showing to what extent a view of the approaching train would be obscured or cut off by a hedge and trees on the east side of the road south of the railway and showing the growth of weeds on and near the right of way. It appeared that defendant had failed to maintain the crossing at the exact standard prescribed by the statute (R. S. 66-227) in these respects: The road was level with the top of the rail for only 9 feet from the center of the track instead of 30 feet; the grade was 9.5 per cent for the first 100 feet south of the crossing, 9.3 per cent for the next 30 to 35 feet, and for the next 100 feet it was 4 per cent. The statutory requirement was that the approaching grade should not exceed 6 per cent. The width of the grade approaching the crossing from the south was from 14.4 feet to 17.6 feet. The ground level on which the approach was constructed was a natural swale. Beneath the graded approach was a culvert for drainage. The height of the grade above the natural ground level was 6 or 7 feet.

On the other allegations of negligence the evidence failed to prove wantonness on the part of defendant's enginemen, and it was affirmatively disproved that there had been any failure to sound the whistle in conformity with the statute. It was also shown or admitted that the township road was dry on the day of the accident.

The jury returned a verdict for $4,750 in favor of plaintiffs, and answered special questions as follows:

"Q. 2. When Blaine Byron Brim, hereinafter in these questions called 'the deceased' was driving his automobile truck northward on the day of the accident and immediately at the intersection of the highway with the south line of the right of way of defendant company, what, if anything, prevented him

from seeing the railroad crossing sign and the railroad track immediately to the north of him? A. Nothing.

"Q. 3. Had the deceased crossed this crossing frequently with the automobile truck which he was driving on the day of the accident in the weeks and months before the accident? A. Yes.

"Q. 4. Was this crossing and the crossing sign on the highway at this point in the same or similar condition which it had been in for several months prior to this accident? A. Yes.

"Q. 5. When the deceased, driving north on the highway immediately prior to the accident, was 240 feet south of the railroad crossing at which he was later struck, could he look north and see the railroad crossing sign and the track across the highway ahead of him? A. Yes.

"Q. 6. When the deceased reached a point 50 feet south of the center of the railroad track as he was driving north upon the highway immediately preceding the accident, and as he proceeded north to a point 30 feet south of the center of the railroad track, what, if anything, prevented him from looking east and north along the right of way and track of the defendant railway company and observing the train approaching from that direction? A. Brush and weeds.

"Q. 7. If you find the defendant railway company negligent, state in what particular act, acts, omission, or omissions such negligence consisted. A. Failure to meet requirements in reference to railway crossings as found in Revised Statutes of the state of Kansas, chap. 66, art. 2, sec. 227, being section 66-227 R. S. 1923, in the particulars of width and grade of the approaches of the crossing in question.

"Q. 8. If you find the defendant railway company negligent in the premises, state what employee or employees of the defendant railway company was guilty of such negligence. A. Such employee or employees of said A. T. & S. F. Rly. as are responsible for construction of said crossing.

"Q. 9. Did the deceased drive his truck in front of a moving railroad train without stopping to look or to listen or to take ordinary precautions for his safety before so doing? A. No.

"Q. 10. If you answer question No. 9 in the negative, then please state what the deceased did immediately before driving upon the railroad track to observe and to protect himself from the accident which caused his death. A. Looked and listened.

"Q. 11. Did the defendant's employees in charge of its engine drawing said train sound the whistle at a point approximately eighty rods from said crossing? A. Yes.

"Q. 12. Did the defendant's employees, in charge of said train, sound the whistle at any time at a distance of approximately eighty rods or less from said crossing? A. Yes.

"Q. 13. Could the injury to the deceased have been avoided by the exercise of reasonable care upon the part of the railway company, in keeping its right of way free from obstructions, and providing a reasonably safe crossing, including the grade and approach which the law of the state of Kansas requires of railway companies at public highway crossings? A. Yes.

"Q. 14. Could the injury to the deceased have been avoided by the exercise of reasonable care on the part of the employees, to wit, the engineer or fireman, considering all the surrounding circumstances? A. No.

"Q. 15. Was not the injury to the deceased inflicted by and through the reckless and wanton conduct of the defendant's employees in charge of the engine? A. No."

Defendant moved to set aside certain findings on the ground that they lacked support in the evidence. This motion was denied, as were also defendant's motions for judgment on the special findings and for a new trial. Judgment was entered for plaintiffs, and defendant assigns certain errors.

It will be observed that the negligence found by the jury lay in defendant's failure to conform to the statutory requirements in reference to railway crossings over township roads. This specific finding of negligence exonerated defendant from any and all other charges of negligence pleaded against it.

In *Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590, the pertinent syllabus reads:

"Where a recovery is sought by reason of several negligent acts of the defendant, and the jury in answer to a special question finds that the negligence upon which they base their verdict is a certain single act of the defendant, the finding in effect acquits the defendant of every charge of negligence alleged in the petition or mentioned in the evidence except the one specifically designated in the finding."

Later cases to the same effect are: *Moreland v. Atchison, T. & S. F. Rly. Co.*, 118 Kan. 713, 236 Pac. 821; *Coleman v. St. Louis-S. F. Rly. Co.*, 130 Kan. 325, 330, 286 Pac. 254; *City of Topeka v. Independence Indemnity Co.*, 130 Kan. 650, 654, 287 Pac. 708; *Stock v. Scott*, 132 Kan. 300, 303, 295 Pac. 638.

Counsel for appellee contend, however, that the jury's answer to special question No. 6 should be construed as another finding of negligence which also contributed to the fatal accident. Be that as it may, the crucial question in this appeal is not whether the railway company was guilty of negligence or not. The railway company was negligent. So the jury said, and we consider that point settled. The vital question is whether the company's negligence as found by the jury (No. 7, or both 6 and 7) caused the death of Brim without contributory negligence on his own part. Brim knew the railway crossing was there. For a week he had been driving over it forty times a day. He knew the graded approach to the crossing was about 9.5 per cent at its steepest incline instead of the statutory limit

of 6 per cent. He knew he was bound to keep a vigilant outlook for railway trains; he knew he must stop for the trains, not the trains for him. He knew just what hedge, brush and weeds cut off or limited his view of any approaching train. And he had no right to drive blindly on to the railway track without assuring himself that no train was coming within such distance as would menace his safety in crossing. It was negligence for him to cross without doing whatever was reasonably necessary to ascertain that no train was approaching. In *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742, and in *Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023, the late Mr. Justice Marshall diligently collated the leading decisions in the preceding half century's history of this court (and of other courts, also), where it had been held that it was negligence for the driver of a vehicle to attempt to cross a railway track at a place where he could not see an approaching train without taking whatever precautions were reasonably necessary to ascertain whether it would be safe to cross at the time he desired to do so. Counsel for appellee direct our attention to finding No. 10, which declares that Brim looked and listened just before he did attempt to drive across the track. To that there are two effective answers: first, there was no evidence to support that finding; and second, if he looked at any point where it would have done any good to look, he must have seen the approaching train (*Young v. Railway Co.*, 57 Kan. 144, 45 Pac. 583; *Pritchard v. Railway Co.*, 99 Kan. 600, 162 Pac. 315; *Crane v. Railway Co.*, 89 Kan. 472, 131 Pac. 1188; *Gaffney v. Railway Co.*, 107 Kan. 486, 192 Pac. 736) ; and if he looked at a point where he could not see, such a futile act would not discharge his duty to himself as a man of ordinary prudence (*C. K. & W. Rld. Co. v. Fisher*, 49 Kan. 460, 482, 483, 30 Pac. 462) to ascertain whether a train was approaching ere he ventured to cross that place of danger. In *Railway Co. v. Wheeler*, 80 Kan. 187, 191, 101 Pac. 1001, it was said:

"It is not enough for a traveler to look where an approaching train cannot be seen or to listen when it cannot be heard. Nor will it suffice that one has looked some distance away from the crossing when a view on a closer approach would have revealed the danger. (*Railroad Co. v. Holland*, 60 Kan. 209; *Railroad Co. v. Entsminger*, 76 Kan. 746.) Where by reason of obstructions or noises an approaching traveler cannot see or hear a coming train, it may be necessary for him to stop or take some other suitable precaution to ascertain whether there is a train in dangerous proximity. (*A. T. & S. F. Rld. Co. v. Hague*, 54 Kan. 284.) In short, he must exercise care proportionate to the perils of the place."

See, also, *Beech v. Railway Co.*, 85 Kan. 90, 116 Pac. 213; *Acker v. Railroad Co.*, 106 Kan. 401, 188 Pac. 419; *Bazzell v. Atchison, T. & S. F. Rly. Co.*, 134 Kan. 272, 276, 277, 5 P. 2d 804. It may be presumed that the jury's finding No. 10 that Brim looked and listened was based upon the trial court's instruction that in the absence of evidence the law would presume that the deceased used ordinary care because of the natural love of life and the instinct of self-preservation of normal persons. But that instruction had no place in this lawsuit because there was not an absence of evidence on the point. The fireman's testimony was that Brim looked straight ahead as he approached the crossing and paid no heed to the train. The jury could disbelieve that testimony if they honestly considered it unworthy of credence, but such disbelief would not give them the right to make a contrary finding without any evidence. And the presumption that the deceased looked and listened or did any other reasonable act which the natural instinct of self-preservation would prompt him to do cannot be indulged since there was no want of evidence on the point. In *Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101, it was said:

"A jury may infer ordinary care and diligence on the part of an injured person, from the love of life, or the instinct of self-preservation, and the known disposition of men to avoid injury, but this presumption is overthrown when there is direct proof to the contrary." (Syl. ¶ 3.)

See, also, *Jones v. Railway Co.*, 91 Kan. 282, 286, 137 Pac. 796, and citations.

Stress is laid on the narrowness of the graded approach to the crossing which might imperil the deceased if another vehicle coming from the north had met him on the grade or crossing, the grade being 9.5 per cent instead of 6 per cent, which prevented him from seeing across the railway track as he advanced to the crossing. That fact gave the deceased no excuse for driving on to the crossing in front of an approaching train. Plaintiffs stress the fact that the level space from the center of the track was only nine feet instead of the statutory thirty feet. Quite true. As we have already remarked, the railway's negligence in failing to construct and maintain the statutory crossing was established, and indeed it is not now disputed in this appeal. But the short extent of the level area at the crossing did not cause this unfortunate man's death. Motor trucks have brakes, and there was no excuse for not using them to hold the truck while Brim could make sure whether or not a train was coming,

even assuming he could not have otherwise discovered it speeding towards the crossing. (*Vance v. Union Pac. Rld. Co.*, 133 Kan. 11, 14, 298 Pac. 764.) .

It cannot be laid down dogmatically that if a person gets injured or killed at a railway crossing in the open country such mishap or fatality could in no event happen but for his own contributory negligence, and of course every crossing-accident case must be decided upon its own peculiar facts. But the instant case differs in no material respect from many which have followed the Wehe and Jacobs cases cited above; and particularly the following:

*Bunton v. Railway Co.*, 100 Kan. 165, 163 Pac. 801, where it was held:

"Where a person attempts to drive an automobile over a railroad crossing in front of a fast-speeding train which he could have seen approaching for a distance of a quarter of a mile or more, and the crossing grade is muddy, steep and slippery, and has a depression of three inches between the rails, whereby his engine loses power and stops in the depression between the rails, and the train is then so near that it cannot be stopped in time to avoid a collision, such person is guilty of contributory negligence which bars his recovery for damages notwithstanding the negligence of the railway company in maintaining the defective crossing." (Syl. ¶ 2.)

*Williams v. Electric Railroad Co.*, 102 Kan. 268, 170 Pac. 397, where it was held that a driver of an automobile cannot recover damages for injury to himself and his machine in a collision with a trolley car occasioned by the driver's attempt to cross a railway track without stopping to ascertain that he could cross in safety, when, owing to obstructions to his view, that fact could not have been otherwise ascertained.

*Acker v. Railroad Co.*, 106 Kan. 401, 188 Pac. 419, where it was held:

". . . Where the plaintiff and his employee who was driving his automobile discovered, just before they were about to cross the railroad track, that their view of the track was obstructed by clouds of smoke from engines standing on another track, it was contributory negligence for them to proceed to cross without stopping and waiting or going to some point where a view of the track could be obtained, if there was no other way of determining whether a train was approaching." (Syl.)

*Cooper v. Railway Co.*, 117 Kan. 703, 232 Pac. 1024, where the familiar rule was applied that where one is about to cross a railway track and obstructions to his sight and hearing prevent him from assuring himself that no train is approaching, it is negligence for

him to risk his life by attempting to cross without otherwise ascertaining that it is safe to do so.

To the same effect were: *Burzio v. Railway Co.*, 102 Kan. 287, 290, 171 Pac. 351; *Reader v. Railway Co.*, 112 Kan. 402, 210 Pac. 1112; *Vance v. Union Pac. Rld. Co.*, 133 Kan. 11, 298 Pac. 764.

In view of the foregoing it must be apparent that the contributory negligence of the deceased was established as a matter of law. The judgment is therefore reversed and the cause remanded with instructions to enter judgment for defendant.